Filed 2/27/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

RANDALL PITTMAN,

    Plaintiff and Appellant,

    v.

BECK PARK APARTMENTS LTD., et al.,

    Defendants and
    Respondents.

B266654

(Los Angeles County
Super. Ct. No. BC410261)

APPEAL from an order of the Superior Court of
Los Angeles County, Michelle R. Rosenblatt, Judge.  Affirmed.

Randall Pittman, in pro. per., for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

_____

On May 28, 2010 the trial court declared Randall Pittman a vexatious litigant and prohibited him, pursuant to Code of Civil Procedure section 391.7, from filing in propria persona any new litigation in the courts of this state without first obtaining leave of the presiding judge or justice of the court where the litigation is proposed to be filed. Over the past seven years Pittman has made several attempts to have that order stricken, reconsidered, vacated or overturned. This appeal is from the trial court's most recent denial of Pittman's motion to vacate the order declaring him a vexatious litigant. We affirm.

## PROCEDURAL BACKGROUND

1. *The Complaint and First Amended Complaint*

On March 23, 2009 Pittman, representing himself, sued his former landlord, Beck Park Apartments Ltd., its parent company, Goldrich & Kest Industries LLC, and their attorneys, Kimball, Tirey & St. John LLP, for wrongful eviction, race and disability discrimination, retaliation, fraud, intentional infliction of emotional distress, unfair business practices and bad faith retention of security deposit. Pittman subsequently amended the complaint to substitute for previously named Doe defendants his former employers, Siemens Healthcare Diagnostics Inc. and Siemens Corporation (collectively Siemens), TEG Staffing Inc. and Unified Technical, Inc., and his former attorneys, Hicks & Hicks; Arias, Ozzello & Gignac, LLP; Krieger & Krieger; and Westrup Klick, LLP. On June 18, 2009 Pittman voluntarily dismissed Kimball Tirey, and on November 6, 2009 he voluntarily dismissed Beck Apartments and Goldrich & Kest Industries pursuant to Code of Civil Procedure section 581.[1]

---

[1] Statutory references are to this code.

2

Pittman filed a first amended complaint on December 2, 2009 that abandoned the claims related to his landlords and the wrongful eviction and instead alleged employment-related claims of discrimination, retaliation, failure to prevent retaliation, blacklisting, intentional infliction of emotional distress, as well as a claim for legal malpractice. The first amended complaint named as defendants the former employers and attorneys previously added to the complaint by substitution.

2. *The Vexatious Litigant Motions*

On January 26, 2010 TEG Staffing moved to declare Pittman a vexatious litigant pursuant to section 391, subdivision (b).[2] Six weeks later Pittman voluntarily dismissed TEG Staffing from the litigation.[3]

---

[2]     Section 391, subdivision (b), identifies four situations in which a litigant may be deemed vexatious. Once declared vexatious, the statutes provide two complementary sets of remedies. Pursuant to sections 391.1, 391.3 and 391.4, "[i]n *pending* litigation, a defendant may have the plaintiff declared a vexatious litigant and, if the plaintiff has no reasonable probability of prevailing, ordered to furnish security. If the plaintiff fails to furnish the security, the action will be dismissed." (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1171.) In addition, pursuant to section 391.7, "a potential defendant may prevent the vexatious litigant plaintiff from filing any new litigation in propria persona by obtaining a prefiling order and, if any new litigation is inadvertently permitted to be filed in propria persona without the presiding judge's [or presiding justice's] permission, may then obtain its dismissal." (*Shalant*, at p. 1171.)

[3]     It does not appear the trial court ruled on TEG Staffing's motion.

3

On March 16, 2010 Siemens moved to declare Pittman a vexatious litigant pursuant to section 391, subdivision (b).[4] Siemens contended Pittman was a vexatious litigant pursuant to section 391, subdivision (b)(1), which defines a vexatious litigant to include a self-represented litigant who "[i]n the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing." Siemens asserted Pittman had commenced and represented himself in five actions between 2006 and 2008, each of which had been voluntarily dismissed, adjudicated against Pittman or abandoned. Three of those actions named Siemens or related entities as defendants.

Siemens also asserted Pittman was a vexatious litigant pursuant to section 391, subdivision (b)(3), which defines a vexatious litigant to include anyone who, "[i]n any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay." Siemens argued Pittman's pleadings were unmeritorious and redundant. Specifically, Pittman had filed three lawsuits against Siemens alleging the same wage-and-hour violations based on 15 months of employment in 2003 and 2004. Pittman had also added Siemens

_____

[4]     Beck Park Apartments and G&K Management Co., Inc., stating it had been erroneously sued as Goldrich & Kest Industries, later joined Siemens's motion although they previously had been dismissed from Pittman's lawsuit.

4

as a defendant in a fourth lawsuit against another former employer even though his employment with the two entities was unrelated.

Siemens further argued Pittman repeatedly engaged in harassing and unnecessary tactics. For example, during three of his previous lawsuits against Siemens, Pittman had filed five motions to disqualify the presiding judges. Each motion was denied. Siemens stated Pittman sent "harassing and intimidating" emails to opposing counsel, one of which included "an extended diatribe about 9/11, the war in Iraq, pharmaceutical companies, and the inequities of the criminal justice system," while in another, Pittman stated, "[L]et them know that that was only one battle because the war will end in the courtroom and that is where I must die." Pittman did not oppose the vexatious litigant motion but instead dismissed Siemens from the case on April 5, 2010.

A hearing on the vexatious litigant motions was held on April 12, 2010. Pittman appeared, but TEG Staffing's and Siemens's counsel, believing the vexatious litigant motions had been taken off calendar due to their clients' dismissals, did not appear. The court stated the dismissals did not "necessarily moot the motion, because I can take judicial notice of the court's records." The court questioned Pittman regarding the five lawsuits discussed in Siemens's motion. Pittman stated three of the cases were pending on appeal. Pittman also asked the court whether Siemens could still bring the motion given its dismissal from the case. The court stated, "They brought the motion, then you tactically dismissed them out." Pittman replied that was correct; and the court continued, "But it has been brought to my attention, and I have the power on my own to review cases

5

[regarding] anyone who might be considered a vexatious litigant. That's the inherent power of the court." The court stated it would continue the hearing on the vexatious litigant motions pending the outcome of the appeals and granted Pittman additional time to oppose the motions.

Rather than file an opposition, Pittman appeared ex parte on April 19, 2010 seeking an order "striking the false pleadings alleged in [Siemens's vexatious litigant motion] pursuant to the Court's own motion" and denying Siemens's motion. In his memorandum of points and authorities Pittman argued he did not meet the statutory definition of a vexatious litigant because the five prior lawsuits cited by Siemens were pending on appeal, pending before the United States Department of Labor or had been re-filed after dismissal. Siemens's counsel was not served with notice of Pittman's ex parte application and did not appear. It is not apparent from the record precisely what occurred during the ex parte hearing. In his brief on appeal Pittman states the court issued an order "declaring that Appellant was not a vexatious litigant." However, the court's minute order states only that Pittman's ex parte application was granted and the hearing date for the vexatious litigant motion was vacated. The day after the hearing, pursuant to the court's order, Pittman prepared and served a notice of ruling, which stated his application for an order striking Siemens's vexatious litigant motion and for an order denying the vexatious litigant motion had been granted.

On April 22, 2010 Siemens's counsel appeared ex parte seeking an order striking or clarifying Pittman's notice of ruling. In a declaration supporting the motion Siemens's counsel stated she had not been served with Pittman's ex parte application and, upon receiving the notice of ruling, she had contacted the court

6

clerk, who informed her the court had not ruled on Siemens's vexatious litigant motion, but had merely taken it off calendar. Siemens asserted Pittman had fabricated the notice of ruling to make it appear the court had denied the vexatious litigant motion so that Pittman could assert collateral estoppel in another proceeding where the defendants had moved to declare him a vexatious litigant. After hearing argument from Pittman and Siemens's counsel, the trial court vacated its minute order of April 19 and re-set Siemens's vexatious litigant motion for hearing. The court again set a deadline for Pittman to respond to the motion.

### 3. *Pittman's Voluntary Dismissal of the Action*

On April 26, 2010 Pittman filed a request for dismissal of the entire action pursuant to section 581. The request was entered as requested by the clerk on the same date.

On April 30, 2010 Siemens filed a supplemental brief in support of its motion to declare Pittman a vexatious litigant. Siemens contended Pittman's dismissal of the action was a "desperate, last-ditch effort" to avoid a ruling on the vexatious litigant motion and argued, relying on *Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, that the trial court had authority to decide the motion despite the dismissal. Siemens also stated Pittman met the standard for a vexatious litigant despite his pending appeals because, since Siemens's motion was filed, Pittman had voluntarily dismissed two additional cases and a third case had been dismissed for failure to prosecute. Siemens recounted additional frivolous tactics in which Pittman had engaged since the filing of the motion, including "libelous," "offensive and demeaning" emails to opposing counsel. In one email Pittman told Siemens's counsel they "need to get off that 'crack pipe.'"

7

Finally Siemens stated that, in a pending action in which Pittman was not a party, he had moved to join the action as a plaintiff and add 21 Doe defendants. Siemens represented that the plaintiff and defendants in that action would be opposing Pittman's motion.

### 4. *The Order Declaring Pittman a Vexatious Litigant*

The trial court heard argument on Siemens's vexatious litigant motion on May 28, 2010. Counsel for Siemens and counsel for G&K Management and Beck Park Apartments appeared at the hearing. Pittman did not appear. At the conclusion of the hearing the court granted Siemens's motion and declared Pittman to be a vexatious litigant pursuant to section 391, subdivision (b), and issued a prefiling order pursuant to section 391.7.[5]

On June 8, 2010 Pittman moved ex parte for an order clarifying or striking the May 28 vexatious litigant order. Pittman argued the order was procured by fraud because counsel for defendant Unified Technical had told Pittman the motion had been taken off calendar due to Pittman's dismissal of the action.[6]

---

[5] The record does not reflect whether the trial court found Pittman to be a vexatious litigant pursuant to section 391, subdivision (b)(1) (commencing, prosecuting or maintaining at least five litigations in the preceding seven-year period that were finally determined adversely to plaintiff) or pursuant to section 391, subdivision (b)(3) (repeatedly filing unmeritorious motions or engaging in frivolous or unnecessary tactics).

[6] Pittman filed a declaration with his ex parte application, attaching a May 17, 2010 letter from Unified Technical's counsel in which Pittman alleges he was told the hearing on the vexatious litigant motion was cancelled. The letter does not mention the vexatious litigant motion or the then-upcoming

8

Pittman further contended the issue whether he was a vexatious litigant had already been determined in the negative in two other proceedings. First, Pittman stated a vexatious litigant motion had been "denied . . . in its entirety" in 2009 in a lawsuit he brought, and subsequently dismissed, against his former employer Day & Zimmerman Group Inc.[7] Second, Pittman stated a similar motion had been denied in June 2010 in another action he brought, and subsequently dismissed, against G&K Management.[8] Pittman also contended he did not meet the statutory definition of a vexatious litigant because the lawsuits cited by Siemens were still pending. Pittman's ex parte application to strike the May 28 vexatious litigant order was denied.

After his June 8, 2010 ex parte appearance Pittman served a notice of entry of order stating the court had "declared [Pittman] **NOT** to be a vexatious litigant." Counsel for Siemens appeared ex parte on July 7, 2010 requesting the court hold Pittman in contempt of court due to his service of an erroneous and fraudulent notice. Siemens's counsel further stated Pittman

May 28 hearing, but states only, "I was advised by the Court Clerk that the herein matter was already dismissed by you on April 26, 2010. . . . [¶] Hence, my client need not respond and we will not respond since the case is no longer active and has been dismissed by the Court."

[7] The minute order cited by Pittman in support of this statement states only that the vexatious litigant motion was continued to a later date.

[8] The minute order cited to support this assertion states a prior order declaring Pittman to be a vexatious litigant was vacated because Pittman had dismissed the action before the court declared him to be a vexatious litigant.

9

had filed the erroneous notice of entry of order in support of an opposition to a motion to dismiss in a pending appeal.  The trial court issued an order directing Pittman to show cause why he should not be held in contempt for abusing the judicial process or falsely pretending to act under the authority of the court (§ 1209, subd. (a)(4)).  Pittman did not file any opposition to the order to show cause, nor did he appear at the hearing.  After taking the matter under submission, the trial court declined to hold Pittman in contempt.

5. *The Prior Appeals and First Motion to Vacate*

On November 23, 2010 Pittman filed a notice of appeal of the April 22, 2010 order striking the April 19, 2010 order, the May 28, 2010 order declaring him a vexatious litigant, and the June 8, 2010 order denying the motion to strike the May 28, 2010 order.  (*Pittman v. Beck Park Apartments LTD*, B229040.)  The appeal was dismissed on March 10, 2011 as untimely.

Two and a half years later, on April 3, 2013, Pittman moved in the trial court pursuant to section 473, subdivision (d),[9] to vacate the May 28, 2010 order declaring him a vexatious litigant and the April 22, 2010 order striking the April 19, 2010 order.  Pittman argued the April 22, 2010 order was void because the court "lacked authority to vacate its own order" and "lacked personal jurisdiction over . . . Siemens" because Siemens had already been dismissed from the action.  Pittman further argued

---

[9]      Section 473, subdivision (d), states, "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and may, on motion of either party after notice to the other party, set aside any void judgment or order."

the May 28, 2010 order was void because it was granted after the action had been dismissed in its entirety and the court therefore lacked jurisdiction to proceed.  Finally Pittman reiterated his earlier argument the May 28, 2010 order was procured by fraud because Unified Technical's counsel had told Pittman the hearing had been cancelled.[10]

After hearing oral argument from Pittman and Siemens's counsel the trial court denied Pittman's motion to vacate on April 23, 2014.  The court found section 473, subdivision (d), did not apply to the situation before it because Pittman did not argue clerical mistakes.  The court stated Pittman's motion should have been brought pursuant to section 391.8, which allows an individual to seek removal of a vexatious litigant designation.  However, because Pittman had not shown changed circumstances as required by section 391.8, the trial court found it could not grant Pittman the relief requested.  The court further stated Pittman's motion "appears to be an untimely attempt to make a motion for reconsideration of previous orders . . . .  Mr. Pittman failed to bring these arguments to the Court in a timely noticed motion pursuant to CCP section 1008."  The court did not address Pittman's voidness or jurisdictional arguments.

On May 2, 2014 Pittman moved for reconsideration of the trial court's denial of the motion to vacate.  Pittman again argued the previously filed cases underlying the vexatious litigant

---

[10]    Pittman filed a supplemental brief in support of his motion to vacate in which he argued Siemens had withdrawn its vexatious litigant motion and the court had "issued an order declaring that Plaintiff was not a vexatious litigant."  The trial court found the supplemental brief to be improper, struck it from the record and did not consider the evidence presented in it.

finding were not final. He also argued the court erred by failing to address his voidness argument. One month later, while the motion for reconsideration was pending, Pittman moved ex parte for an order striking all Siemens's pleadings and "oral and written statements" in the case. The ex parte application was denied.

On June 19, 2014, with his motion for reconsideration still pending, Pittman filed a second notice of appeal. Pittman again sought review of the order declaring him a vexatious litigant as well as of the April 2014 denial of the motion to vacate. While the appeal was pending, Pittman filed a supplemental brief in the trial court in support of his pending motion for reconsideration. In the supplemental brief Pittman argued the trial court retained jurisdiction to rule on the motion for reconsideration despite the pending appeal. After a hearing on October 14, 2014 at which Pittman appeared, the motion for reconsideration was denied.

Pittman's second appeal was dismissed on January 14, 2015 after this court declined to issue a prefiling order pursuant to section 391.7, subdivision (c). The court found Pittman had failed to meet his burden of showing the appeal had merit and had not been taken for the purpose of harassment or delay.

6. *The Current Motion To Vacate*

Pittman filed a second motion to vacate the vexatious litigant order on March 5, 2015. He again argued the order was void because it had been entered after Pittman's voluntary dismissal of the lawsuit, which he stated deprived the court of jurisdiction to hear the vexatious litigant motion. Pittman contended the court erred to the extent it relied on *Bravo v. Ismaj, supra,* 99 Cal.App.4th 211, for authority to hear the motion after dismissal because that case was inapplicable.

12

Pittman also argued "priority of jurisdiction" prevented the court from ruling on the vexatious litigant motion because the issue had already been decided in another matter. Pittman further reiterated his argument the vexatious litigant order was void because he had fraudulently been told by United Technical's counsel that the matter had been taken off calendar. Finally, Pittman contended the order should be vacated based on collateral estoppel because a federal judge had denied a vexatious litigant motion directed to Pittman in 2014.[11]

The court held a hearing on the motion to vacate on August 12, 2015 at which Pittman failed to appear. The court adopted its tentative order denying Pittman's motion. As to Pittman's voidness argument, the court found Pittman had not explained why *Bravo* was inapplicable to this case. Further, the court stated, a challenge to the court's reliance on *Bravo* was a "merit-based argument" that should have been brought within the timeframe of a motion for reconsideration under section 1008, subdivision (a). The court also rejected Pittman's fraud argument because he failed to meet the requirements for equitable relief as stated in *Rodriguez v. Cho* (2015) 236 Cal.App.4th 742.[12]

---

[11] The record reflects an opposition to the second motion to vacate was filed on June 15, 2015, but it was not provided in the record on appeal.

[12] "'"The court may grant relief under its inherent equity power if, because of the fraud of his opponent, the aggrieved party was prevented from presenting his claim or defense to the court. . . ."'" [¶] Additionally, the party seeking equitable relief on the grounds of extrinsic fraud or mistake must show three elements: (1) a meritorious defense; (2) a satisfactory excuse for not presenting a defense in the first place; and (3) diligence in

13

Specifically, Pittman did not present a declaration from the attorney he claimed had told him the motion was off-calendar, nor had Pittman shown he had a meritorious defense to the motion.  The court also rejected Pittman's collateral estoppel argument because the 2014 federal court order could not have estopped the earlier 2010 vexatious litigant order.

Pittman filed a notice of appeal on September 4, 2015.  After the record on appeal was filed and Pittman responded to an order requiring a preliminary showing of merit pursuant to section 391.7, subdivision (b), Pittman was granted leave to proceed with his appeal.

## DISCUSSION

1. *Governing Law and Standard of Review*

Section 473, subdivision (d), provides a trial court "may, on motion of either party after notice to the other party, set aside any void judgment or order."  "[I]nclusion of the word 'may' in the language of section 473, subdivision (d) makes it clear that a trial court retains discretion to grant or deny a motion to set aside a void judgment [or order]."  (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495.)  However, the trial court "has no statutory power under section 473, subdivision (d) to set aside a judgment [or order] that is not void . . . ."  (*Id.* at pp. 495-496.)  Thus, the reviewing court "generally faces two separate determinations when considering an appeal based on section 473, subdivision (d):  whether the order or judgment is void and, if so, whether the trial court properly exercised its discretion in setting it aside."  (*Nixon Peabody LLP v. Superior Court* (2014)

_____

seeking to set aside the default judgment once discovered." (*Rodriguez v. Cho, supra,* 236 Cal.App.4th at p. 750.)

14

230 Cal.App.4th 818, 822.)  The trial court's determination whether an order is void is reviewed de novo; its decision whether to set aside a void order is reviewed for abuse of discretion. (*Ibid.;* see also *Cruz,* at p. 496.)

In determining whether an order is void for purposes of section 473, subdivision (d), courts distinguish between orders that are void on the face of the record and orders that appear valid on the face of the record but are shown to be invalid through consideration of extrinsic evidence.  "This distinction may be important in a particular case because it impacts the procedural mechanism available to attack the judgment [or order], when the judgment [or order] may be attacked, and how the party challenging the judgment [or order] proves that the judgment [or order] is void."  (*OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1327 (*OC Interior Services*).)

An order is considered void on its face only when the invalidity is apparent from an inspection of the judgment roll or court record without consideration of extrinsic evidence. (*OC Interior Services, supra*, 7 Cal.App.5th at p. 1327 ["[t]o prove that the judgment is void [on its face], the party challenging the judgment is limited to the judgment roll, i.e., no extrinsic evidence is allowed"]; see also *Tearlach Resources Limited v. Western States Internat., Inc.* (2013) 219 Cal.App.4th 773, 779.) There is no time limit to attack a judgment void on its face. (*OC Interior Services*, at p. 1327; *Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1440 (*Ramos*); *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 19.)  If the invalidity can be shown only through consideration of extrinsic evidence, such as declarations

15

or testimony, the order is not void on its face.  Such an order must be challenged within the six-month time limit prescribed by section 473, subdivision (b), or by an independent action in equity.  (*OC Interior Services,* at p. 1328; *Ramos*, at p. 1440; *Plaza Hollister Ltd. Partnership,* at p. 19.)

> 2.  *The Order Declaring Pittman To Be a Vexatious Litigant*
>     *Is Not Void for Lack of Jurisdiction*

Pittman argues the trial court erred in failing to vacate the vexatious litigant order as void because his voluntary dismissal of the case deprived the trial court of jurisdiction to rule on the pending vexatious litigant motion.  Pittman's chronology is correct:  The record shows Siemens's vexatious litigant motion was filed in March 2010, Pittman dismissed the case in April 2010, and the court granted Siemens's motion in May 2010.

Pittman's motion to vacate was filed almost five years after the challenged order.  However, because the facts supporting the alleged jurisdictional defect are ascertainable by looking solely at the record, Pittman's argument can be categorized as challenging the order as void on its face.  As such, Pittman's motion was not barred for being untimely.  (See *OC Interior Services*, *supra*, 7 Cal.App.5th at p. 1327.)[13]

---

[13]    Pittman has not addressed, either in the trial court or on appeal, the propriety of filing successive and repetitive motions to vacate the same order.  The rule allowing an aggrieved party to challenge an order void on its face at any time does not mean a party may perpetually move to vacate the order until he or she receives a favorable ruling.  "'Somewhere along the line, litigation must cease."  (*Gillies v. JPMorgan Chase Bank, N.A.* (2017) 7 Cal.App.5th 907, 914.)  Because we now decide Pittman's jurisdictional argument on the merits, any subsequent attempt by him to challenge the validity of the vexatious litigant order on

On the merits, Pittman is correct that a plaintiff's voluntary dismissal of an action generally deprives the court of jurisdiction in the case. (See *Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 784 ["[u]pon the proper exercise of that right [of voluntary dismissal], a trial court would thereafter lack jurisdiction to enter further orders in the dismissed action"]; *Law Offices of Andrew L. Ellis v. Yang* (2009) 178 Cal.App.4th 869, 876 [same].) Accordingly, most orders entered after the dismissal are void and have no effect. (*Gogri v. Jack in the Box Inc.* (2008) 166 Cal.App.4th 255, 261 ["'[a]n order by a court lacking subject matter jurisdiction is void'"]; *Paniagua v. Orange County Fire Authority* (2007) 149 Cal.App.4th 83, 89 ["'[i]t is a well-settled proposition of law that where the plaintiff has filed a voluntary dismissal of an action . . . , the court is without jurisdiction to act further, and any subsequent orders of the court are simply void'"].)

Notwithstanding this general principle, "courts have carved out a number of exceptions to this rule in order to give meaning and effect to a former party's statutory rights." (*Frank Annino & Sons Construction, Inc. v. McArthur Restaurants, Inc.* (1989) 215 Cal.App.3d 353, 356 (*Frank Annino*).) When a post-dismissal or postjudgment motion involves collateral statutory rights, then the court may retain jurisdiction to determine and enforce those rights. (*Id.* at p. 357; accord, *Day v. Collingwood* (2006) 144 Cal.App.4th 1116, 1125 (*Day*).) One frequent example of post-dismissal or postjudgment retention of jurisdiction occurs when courts hear motions related to attorney fees and costs.

---

this ground would run afoul of the principles of issue and claim preclusion, as well as exposing Pittman to sanctions under section 128.5.

17

(See, e.g., *Barry v. State Bar of California* (2017) 2 Cal.5th 318, 326 ["[n]or is lack of subject matter jurisdiction a bar to awarding attorney's fees and costs"]; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1290 ["dismissal [for failure to prosecute] does not divest the trial court of jurisdiction to award attorney fees"]; *State of California ex rel. Standard Elevator Co. v. West Bay Builders, Inc.* (2011) 197 Cal.App.4th 963, 980 [holding trial court had jurisdiction to award statutory attorney fees in qui tam action even if court had no subject matter jurisdiction over the case]; *Pfeiffer Venice Properties v. Bernard* (2002) 101 Cal.App.4th 211, 218 ["defendants were entitled to a ruling [after dismissal] on the merits of their SLAPP motion, the result of which will necessarily determine their right to attorney fees"].)  Courts have likewise held jurisdiction is retained post-dismissal and postjudgment to decide motions for sanctions.  (See, e.g., *Day,* at p. 1126 ["[w]e conclude the trial court had jurisdiction to consider Collingwood's postjudgment motion for sanctions"]; *Eichenbaum v. Alon* (2003) 106 Cal.App.4th 967, 976 [same]; *West Coast Development v. Reed* (1992) 2 Cal.App.4th 693, 706 [same]; *Frank Annino,* at pp. 358-359 [same].)

The rationale for retaining jurisdiction to decide sanctions motions is particularly instructive for the issue before us.  In *Frank Annino* the plaintiff voluntarily dismissed a defendant the day before the hearing on that defendant's motion for summary judgment.  (*Frank Annino, supra*, 215 Cal.App.3d at p. 356.)  After the dismissal the defendant moved for sanctions under section 128.5 based on the plaintiff and his attorney's alleged bad faith and frivolous tactics.  The trial court granted the motion.  On appeal this court acknowledged the general rule that dismissal deprives the court of jurisdiction but held consideration

18

of sanctions issues was an exception.  (*Id.* at pp. 357-359.)  We analogized the postjudgment consideration of a sanctions motion to the postjudgment award of attorney fees, explaining the purpose of statutory sanctions is "much the same" as statutory attorney fees:  "to discourage parties and their attorneys from engaging in bad faith tactics and to compensate a party victimized by such tactics. . . .  [T]here is no basis in logic or public policy to deny the victim the remedy of sanctions simply because, through the bad actor's own doing, the victim is no longer a party." (*Id.* at p. 358.)  A contrary rule, we continued, "would render section 128.5 virtually useless as a weapon against actions or tactics that are totally without merit or undertaken for the sole purpose of harassment.  A party or attorney could act in the most egregious bad faith, engage in the most outrageous conduct, and do so with impunity.  They could avoid sanctions by simply dismissing the action without prejudice. . . .  Such a result is untenable given the obvious purpose of the sanction statute.  It also violates any reasonable sense of justice and fair play." (*Id.* at p. 359.)

In *Day* the court similarly held jurisdiction was retained to consider a sanctions motion filed after summary judgment was granted to defendant.  The court adopted the reasoning we had articulated in *Frank Annino* and further emphasized the collateral and ancillary nature of a sanctions motion, stating, "[A] trial court's consideration of a postjudgment sanctions request does not undermine the finality of the merits of the judgment." (*Day, supra,* 144 Cal.App.4th at p. 1125.)  Thus, retaining jurisdiction to decide a postjudgment motion would not interfere with a party's entitlement to rely on that judgment.  (*Ibid.*)

19

The United States Supreme Court has reached the same conclusion. In *Cooter & Gell v. Hartmarx Corp.* (1990) 496 U.S. 384 [110 S.Ct. 2447, 110 L.Ed.2d 359] the Court held sanctions under rule 11 of the Federal Rules of Civil Procedure (Rule 11) could be imposed when the plaintiff voluntarily dismissed the complaint after the sanctions motion had been filed. The Court noted a voluntary dismissal does not eliminate the sanctionable conduct, stating, "[T]he harm triggering Rule 11's concerns has already occurred. Therefore, a litigant who violates Rule 11 merits sanctions even after a dismissal." (*Cooter*, at p. 398.) The Court stated imposing sanctions after dismissal was consistent with Rule 11's purpose to deter litigant misconduct, otherwise "a litigant could purge his violation of Rule 11 merely by taking a dismissal . . . ." (*Cooter*, at p. 398.) The Court also emphasized that a sanctions motion has no effect on the merits of the action but is a "determination of a collateral issue . . . . Such a determination may be made after the principal suit has been terminated." (*Cooter*, at p. 398; see also *Willy v. Coastal Corp.* (1992) 503 U.S. 131, 139 [112 S.Ct. 1076, 1081, 117 L.Ed.2d 280] [holding court could impose Rule 11 sanctions despite not having subject matter jurisdiction because the "interest in having rules of procedure obeyed, by contrast, does not disappear upon a subsequent determination that the court was without subject-matter jurisdiction"].)

Similar reasoning was employed by the court in *Bravo v. Ismaj*, *supra,* 99 Cal.App.4th 211, relied on by Siemens and the trial court. In *Bravo* the trial court granted a vexatious litigant motion filed after judgment had been entered. On appeal plaintiff argued a lawsuit must be pending at the time a party files a vexatious litigant motion. As Pittman correctly points out,

20

the case is distinguishable because the Fourth District held the matter was still pending when the vexatious litigant order was issued due to the plaintiff's motion for a new trial. However, as an alternative basis for its ruling, the court rejected the plaintiff's contention that an action must be pending for a vexatious litigant order to issue. Without addressing the jurisdictional issues, the court reasoned section 391.7 "affords protection to defendants named in pleadings not yet filed with the court. If individuals named as defendants in these lawsuits were required to wait until the action was pending, the prefiling order provided for in section 391.7 would be illusory." (*Bravo*, at pp. 222-223.)

We agree with the reasoning in these cases. Like a motion for attorney fees or sanctions, a motion to declare a self-represented plaintiff a vexatious litigant deals with an ancillary issue and has no bearing on the finality of the judgment or dismissal. Retaining jurisdiction to decide a vexatious litigant motion is consistent with the purpose of the statutes, which are "designed to curb misuse of the court system by those persistent and obsessive litigants who, repeatedly litigating the same issues through groundless actions, waste the time and resources of the court system and other litigants." (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1169.) A dismissal does not rectify the harm already done by the filing of a groundless action. Nor does the dismissal extinguish the court's interest in deterring and punishing the waste of judicial resources. A contrary rule would allow a litigant to strategically escape a vexatious litigant finding altogether by dismissing a party or an action prior to a ruling on the vexatious litigant motion and then refiling his or her claims in a later proceeding. This is precisely the tactic Pittman has engaged in here. To fulfill the statute's aim of protecting future

21

potential litigants, the ability to declare an individual a vexatious litigant must survive even after the action has been dismissed. (See *Bravo v. Ismaj*, *supra,* 99 Cal.App.4th at pp. 222-223.)

### 3. *Pittman's Motion To Vacate Based on Extrinsic Fraud Was Untimely*

Pittman also contends the vexatious litigant order is void because he was fraudulently told by opposing counsel the hearing on the motion would not occur. As discussed, "[w]here, as here, a motion to vacate is made more than six months after entry of a judgment [or order], a trial court may grant a motion to set aside that judgment [or order] as void only if the judgment [or order] is void on its face." (*Ramos*, *supra*, 223 Cal.App.4th at p. 1440.)

Here, Pittman's contention the order is void based on extrinsic fraud cannot be resolved by examining the court record. Rather, it requires consideration of extrinsic evidence, specifically Pittman's own factual assertions, his declaration and the letter sent to him by counsel for Unified Technical. Accordingly, Pittman's motion under section 473, subdivision (d), made five years after the entry of the order, was untimely. (See *OC Interior Services*, *supra*, 7 Cal.App.5th at p. 1327; *Ramos, supra,* 223 Cal.App.4th at p. 1440; *Plaza Hollister Ltd. Partnership v. County of San Benito, supra,* 72 Cal.App.4th at p. 19.)

To the extent Pittman intended to argue the trial court should have exercised its equitable powers to grant relief, his argument fails. "[E]ven where relief is no longer available under statutory provisions, a trial court generally retains the inherent power to vacate a default judgment or order on equitable grounds where a party establishes that the judgment or order . . . resulted from extrinsic fraud or mistake." (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1228.) As the trial court

22

recognized, "the party seeking equitable relief on the grounds of extrinsic fraud or mistake must show three elements: (1) a meritorious defense (2) a satisfactory excuse for not presenting a defense in the first place; and (3) diligence in seeking to set aside the [order] once discovered." (*Rodriguez v. Cho, supra,* 236 Cal.App.4th at p. 750.)

The trial court found Pittman had not carried his burden because he failed to show he had a meritorious defense to the vexatious litigant motion. Pittman has not addressed this finding on appeal other than the vague statement he "would have provided evidence that showed that he had not lost five lawsuits within the preceding seven years and that his conduct did not rise to [the] level to be declared a vexatious litigant." Given the absence of any evidence or argument in the record establishing a meritorious defense to the vexatious litigant motion, the trial court did not abuse its discretion in declining to vacate the order on equitable grounds. (See *County of San Diego v. Graham, supra,* 186 Cal.App.4th at p. 1230 ["[w]e review the court's denial of a motion for equitable relief to vacate a default judgment or order for an abuse of discretion"].)

4. *Pittman's Argument the Trial Court Lacked Jurisdiction To Vacate Its April 19, 2010 Minute Order Is Forfeited*

Pittman argues the trial court lacked jurisdiction to vacate its April 19, 2010 order (and subsequently to enter the order declaring him a vexatious litigant) because the requirements of section 1008, governing motions for reconsideration, were not met.[14] While we have considerable doubt regarding the

_____

[14] Section 1008, subdivision (a), allows a party to move for reconsideration of an order within 10 days after service on the party of written notice of the order and requires any motion for

23

applicability of section 1008 to the circumstances here, we need not resolve the issue.  Pittman did not raise the question of section 1008's applicability in the motion to vacate, and it is forfeited.  (See *In re Sheena K.* (2007) 40 Cal.4th 875, 880 ["""[n]o procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it"""]; *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 [it is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court]; *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592 ["'[a]ppellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider'"].)

---

reconsideration be based "'upon new or different facts, circumstances, or law. . . .'"  (See *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1098; *Advanced Building Maintenance v. State Comp. Ins. Fund* (1996) 49 Cal.App.4th 1388, 1392.)

24

## DISPOSITION

The order is affirmed.  Because no respondent appeared, Pittman is to bear his own costs on appeal.


                                    PERLUSS, P. J.

We concur:


SEGAL, J.


BENSINGER, J.*

---

*       Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.