Filed 6/30/21  Jones v. Halfacre CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| KIMBERLY JONES,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>ERIC M. HALFACRE,<br><br>　　Defendant and Appellant. | B303380<br><br>(Los Angeles County<br>Super. Ct. No. SC123365) |

　　APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Marc D. Gross, Judge.  Affirmed.

　　Gardner + Associates, Jennifer B. Gardner, Booth, Hillary Arrow Booth and Allan P. Bareng for Defendant and Appellant.

　　Nossaman, Jennifer L. Meeker and Maya G. Hamouie for Plaintiff and Respondent.

———————————————

Erik M. Halfacre (erroneously sued as Eric M. Halfacre) appeals the order denying his motion to vacate the default judgment for more than $1 million entered in favor of Kimberly Jones. Halfacre contends the trial court erred in denying his motion as untimely, concluding the default judgment was not void on its face and declining to grant relief pursuant to its equitable powers. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Complaint, Service by Publication and Entry of Default and Default Judgment*

On November 6, 2014 Jones sued Halfacre and MJH Sales, Inc. for conversion, fraud, breach of contract of bailment and rescission.[1] According to the allegations in her complaint, in July 2014 Jones contracted with Halfacre to sell some of her unwanted jewelry. Jones had a business relationship with Halfacre because she and her ex-husband had frequented Halfacre's parents' jewelry store, where Halfacre had worked. Based on Halfacre's representations that he was fully insured, Jones consigned jewelry worth in excess of $3.5 million to Halfacre to sell on her behalf.

Shortly after entering into the agreement Jones received $400,000 as a good faith advance from Halfacre for the anticipated sale of her jewelry. Without approval from Jones, Halfacre then purported to complete a sale of all but five pieces of jewelry to MJH Sales for $453,200. Jones alleged she objected to the sale, demanded the return of her jewelry and offered to

---

[1] Jones asserted the recission cause of action only against MJH Sales. MJH Sales was dismissed from the case and is not a party to this appeal.

2

return the $400,000 advance. Halfacre informed Jones the sale was completed and could not be unwound. Halfacre returned some, but not all, of the unsold jewelry. Taking into account the $400,000 advance, Jones alleged, "the value of the subject jewelry exceeded the paid amount(s) by an amount exceeding $1,000,000 to be proven at trial." In her prayer for relief Jones sought damages "including without limitation the difference between the fair market value of the jewelry and the advance payment she received, according to proof but in no [event] less than the jurisdictional minimum of this Court." The civil case cover sheet identified a Marina del Rey address for Halfacre.

On February 2, 2015 Jones filed an application for service by publication using the Los Angeles Superior Court's approved form. Her attorney, Gary Kurtz, declared the summons and complaint could not be served by any other available methods, including by mail. Kurtz requested publication in the "Daily Journal" as the newspaper most likely to give notice and averred Halfacre was "actively avoiding service and reasonable diligence has been used to attempt service." Jones's investigator, Daniel Thibodeau, declared he "spent approximately two weeks working on the service of Mr. Halfacre." Thibodeau had located "possible addresses in San Diego, Orange and Los Angeles counties, and went to each address." At the San Diego address Thibodeau "found no evidence . . . [that] Mr. Halfacre was still residing at that address." Likewise, the address in the San Fernando Valley "did not appear to be a valid lead." At the initial Orange County address Thibodeau spoke with Halfacre's ex-wife, who provided a current address for Halfacre elsewhere in Orange County (in Corona del Mar). Thibodeau went to the new address on December 22, 2014 and "was able to confirm that it was a valid

3

address for Mr. Halfacre." He observed a vehicle registered to Halfacre's wife at the house. Also, "[i]t appeared that Mr. Halfacre was present in the house, but he would not come to the door." Thibodeau spent seven hours "in surveillance, but [Halfacre] would not come to the door." Eight days later Thibodeau returned to the Orange County address, spending nearly nine hours in travel and surveillance. Again, Thibodeau observed the vehicle registered to Halfacre's wife, and "[i]t appeared that Mr. Halfacre was in the residence but would not come out to be served." Thibodeau opined that Halfacre was aware of the lawsuit and actively evading service. In his opinion, given "the extreme difficulty in serving a person who is actively attempting to evade service . . . service by publication is the only effective means of achieving service."

The trial court issued the requested order on February 2, 2015 and ordered publication in the Los Angeles Daily Journal. The court also ordered Jones to mail Halfacre a copy of the summons and complaint if she was able to ascertain his address during the publication period and to file "[a] declaration of this mailing, or of the fact that the address was not ascertained." On April 7, 2015 a proof of service by publication was filed.

On May 19, 2015 Jones filed a request for entry of default against Halfacre. She submitted a copy of the publication notice from the Los Angeles Daily Journal. Halfacre's default was entered the same day.

4

On June 8, 2015 Jones filed a request for entry of default judgment. On the same day the trial court entered a default judgment against Halfacre in the amount of $3,202,299.50.[2]

2. *Halfacre's Motion To Set Aside the Default Judgment*

Nearly four years later, on April 4, 2019, Halfacre moved to set aside the default judgment seeking relief pursuant to Code of Civil Procedure sections 473, subdivision (d), 473.5 and 580, subdivision (a).[3] Halfacre asserted he first became aware of the default judgment when he was personally served with an order to appear for a debtor's examination on January 23, 2019 and argued the judgment was void for lack of proper service, he lacked actual notice of the lawsuit, and the $3.2 million judgment impermissibly exceeded the damages alleged in the complaint. With respect to service by publication, Halfacre contended Jones had failed to exercise reasonable diligence in attempting to serve him by another acceptable method, including by mail. Halfacre submitted a declaration stating he had been living in Corona del Mar when Jones attempted to personally serve him in December 2014 with the summons and complaint and had not (and would not have) evaded service given he had meritorious defenses against Jones's claims. Halfacre also stated his mail was forwarded from his former Marina del Rey address to his Corona del Mar address and, had he been mailed a copy of the summons and complaint, he would have received notice of the lawsuit and defended himself.

---

[2] Judge Gerald Rosenberg issued the order for service by publication and entered the default judgment against Halfacre.

[3] Statutory references are to this code.

5

Jones opposed Halfacre's motion, arguing the motion was untimely; the application for service by publication was valid; and the judgment was not void for any reason, including by exceeding the amount of damages alleged in the complaint. Although emphasizing that extrinsic evidence could not be considered in determining whether the judgment was void, Jones nonetheless submitted declarations from herself, Kurtz and Thibodeau. Kurtz stated that, prior to filing the lawsuit, he was in communication with Halfacre by email, but that Halfacre had told him to stop contacting him. Kurtz also informed Halfacre's bankruptcy lawyer about the lawsuit Jones intended to file but never received a response. Kurtz recalled receiving three possible addresses for Halfacre from Thibodeau, which included the Marina del Rey address that was listed on the civil case cover sheet. Kurtz mailed a copy of the summons and complaint to each address Thibodeau found for Halfacre, including the Corona del Mar address where Halfacre was subsequently located. Kurtz stated the summons and complaint mailed to the Marina del Rey and Corona del Mar addresses were not returned to him. Thibodeau stated in his declaration that he "was able to ascertain [Halfacre's] actual address in December 2014, which I believe was [street number deleted] Heliotrope, Corona [d]el Mar, California." Thibodeau declared he had spoken with Halfacre through the door and informed him he was a process server there to serve him with papers from Jones, but Halfacre would not open the door.

Halfacre filed a reply arguing for the first time that the trial court should exercise its equitable powers to set aside the judgment based on extrinsic fraud, primarily based on the declarations submitted by Jones establishing she knew Halfacre

6

lived in Orange County but misled the trial court in her application for service by publication by stating service could not be completed in any other manner. Halfacre also argued he had meritorious defenses against Jones's claims, which he would have asserted had he known about the lawsuit.

At the hearing on the motion, in addition to the arguments initially presented in the moving papers, Halfacre's counsel asked the court to exercise its equitable powers to vacate the default judgment based on unfairness as demonstrated by the extrinsic evidence. Jones's counsel again noted the motion was untimely and argued Halfacre had forfeited any argument that the trial court should exercise its equitable powers to vacate the judgment. However, with respect to the amount of the judgment, Jones's counsel conceded "a $1 million judgment is absolutely appropriate."

The trial court denied relief pursuant to sections 473.5 and 473, subdivision (d), because the motion was untimely.[4] The court further ruled the judgment was not void on its face, explaining Halfacre had cited "no legal authority holding that a declaration regarding reasonably diligent service attempts that lacks sufficient detail renders the judgment void on its face." The court also denied Halfacre's request to set aside the judgment due to extrinsic fraud because the argument was not raised until the reply brief. Even if it were to consider the belated request, the court concluded, there was insufficient persuasive evidence of extrinsic fraud given Kurtz's declaration that he had mailed the

---

[4] Judge Marc D. Gross issued the ruling on Halfacre's motion to vacate judgment.

summons and complaint to the Corona del Mar and Marina del Rey addresses, which were never returned to him.

As to the issue of damages, the court found the only definite allegations in the complaint were for $1 million. The court modified the default judgment accordingly, including the award of prejudgment interest. An amended judgment was entered, nunc pro tunc, on December 6, 2019 for $1,071,066.62.

Halfacre filed a timely notice of appeal.

## DISCUSSION

1. *Standard of Review*

Section 473, subdivision (d), provides a trial court "may, on motion of either party after notice to the other party, set aside any void judgment or order." "[I]nclusion of the word 'may' in the language of section 473, subdivision (d) makes it clear that a trial court retains discretion to grant or deny a motion to set aside a void judgment [or order]." (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495.) However, the trial court "has no statutory power under section 473, subdivision (d) to set aside a judgment [or order] that is not void." (*Id.* at pp. 495-496.)

The reviewing court "generally faces two separate determinations when considering an appeal based on section 473, subdivision (d): whether the order or judgment is void and, if so, whether the trial court properly exercised its discretion in setting it aside." (*Nixon Peabody LLP v. Superior Court* (2014) 230 Cal.App.4th 818, 822.) The trial court's determination whether an order is void is reviewed de novo; its decision whether to set aside a void order is reviewed for an abuse of discretion. (*Ibid.*; see *Airs Aromatics, LLC v. CBL Data Recovery Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1018; *Cruz v. Fagor America, Inc.*, *supra*, 146 Cal.App.4th at p. 496.)

8

2. *The Trial Court Did Not Err in Denying Halfacre's Motion To Set Aside the Default Judgment Pursuant to Section 473, Subdivision (d)*

a. *A default judgment can be challenged at any time only if void on its face*

Effectively conceding the trial court properly denied as untimely his motion to set aside the default judgment pursuant to section 473.5, subdivision (a), for lack of actual notice of Jones's lawsuit,[5] Halfacre contends the motion was timely pursuant to section 473, subdivision (d), because that statute imposes no time limit to challenge a void judgment. Halfacre is only partially correct.

"In determining whether an order is void for purposes of section 473, subdivision (d), courts distinguish between orders that are void on the face of the record and orders that appear valid on the face of the record but are shown to be invalid through consideration of extrinsic evidence." (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1021 (*Pittman*).) "This distinction may be important in a particular case because it impacts the procedural mechanism available to

---

[5] When moving to vacate a judgment because the service of summons did not result in actual notice of the lawsuit, section 473.5, subdivision (a), requires the motion to be "served and filed within a reasonable time, but in no event exceeding the earlier of: (i) two years after entry of a default judgment against him or her; or (ii) 180 days after service on him or her of a written notice that the default or default judgment has been entered." (See *Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 180 [applying statute and concluding section 473.5 does not offer defendant "an avenue for relief because [defendant's] motion was filed over two years after the entry of judgment"].)

attack the judgment [or order], when the judgment [or order] may be attacked, and how the party challenging the judgment [or order] proves that the judgment [or order] is void." (*OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1326 (*OC Interior Services*).)

There is no time limit to challenge a judgment void on its face. (See *Pittman, supra*, 20 Cal.App.5th at p. 1021; *OC Interior Services, supra*, 7 Cal.App.5th at p. 1326; *Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1440.) However, "[w]here a party moves under section 473, subdivision (d) to set aside 'a judgment that, though valid on its face, is void for lack of proper service, the courts have adopted by analogy the statutory period for relief from a default judgment' provided by section 473.5, that is, the two-year outer limit." (*Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 180; accord, *Bae v. T.D. Service Co. of Arizona* (2016) 245 Cal.App.4th 89, 97 [relief is subject to the time period specified in section 473.5 when the party seeking relief maintains the judgment, although facially valid, is void due to lack of proper service of process]; see *Pittman,* at p. 1021 ["If the invalidity can be shown only through consideration of extrinsic evidence, such as declarations or testimony, the order is not void on its face. Such an order must be challenged within the six-month time limit prescribed by section 473, subdivision (b), or by an independent action in equity"]; *OC Interior Services*, at p. 1328; *Ramos*, at p. 1440; *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 19.)

Halfacre filed his motion to vacate the default judgment nearly four years after judgment had been entered. Thus, the trial court did not err in concluding Halfacre's motion was

10

untimely pursuant to section 473, subdivision (d), to the extent he relied on extrinsic evidence to prove the default judgment was void. However, as Halfacre contends, his motion was timely pursuant to section 473, subdivision (d), if he could demonstrate the judgment was void on its face.

> b. *The default judgment was not void on its face*

Halfacre contends the judgment was void on its face because the application for publication failed to show "reasonable diligence" in trying to serve Halfacre by other available methods and publication was ordered in the Los Angeles Daily Journal despite Jones's knowledge of Halfacre's valid address in Orange County.[6]

"To prove that the judgment is void [on its face], the party challenging the judgment is limited to the judgment roll, i.e., no extrinsic evidence is allowed." (*OC Interior Services*, *supra*, 7 Cal.App.5th at p. 1327; accord, *Tearlach Resources Limited v. Western States Internat., Inc.* (2013) 219 Cal.App.4th 773, 779 [same].) Section 670, subdivision (a), defines "judgment roll" as including "the summons, with the affidavit or proof of service; the

---

[6] Halfacre also argues Jones's application for service by publication was defective because section 415.50, subdivision (a)(1), requires the application include an affidavit that "[a] cause of action exists against the party upon whom service is to be made or he or she is a necessary or proper party to the action." Jones submitted the superior court's approved form for service by publication, which included a signed declaration that she believed Halfacre was "a necessary party to my complaint or petition on file herein, or the complaint or petition correctly states a cause of action against defendant/respondent." Halfacre has failed to demonstrate this declaration was insufficient.

complaint; the request for entry of default with a memorandum indorsed thereon that the default of the defendant in not answering was entered, and a copy of the judgment; . . . and in case the service so made is by publication, the affidavit for publication of summons, and the order directing the publication of summons." Here, the affidavits submitted by Jones, Kurtz and Thibodeau in support of service by publication of the summons are part of the judgment roll.

Section 415.50, subdivision (a), provides service may be completed by publication "if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article." Because "[p]ersonal service remains the method of choice under the statutes and the constitution," the requirements for service by publication of the summons must be strictly construed. (*Olvera v. Olvera* (1991) 232 Cal.App.3d 32, 41; see *Calvert v. Al Binali* (2018) 29 Cal.App.5th 954, 963 [collecting cases].) In construing compliance with the statute, we "consider not only the affidavit itself, but the facts demonstrated by the applicant." (*Olvera*, at p. 42.)

Section 415.50, subdivision (b), in turn, provides, if service by publication is ordered the "court shall order the summons to be published in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served" and that the "order shall direct that a copy of the summons, the complaint, and the order for publication be forthwith mailed to

the party if his or her address is ascertained before expiration of the time prescribed for publication of the summons."[7]

Thibodeau's declaration established Jones's reasonable diligence in attempting to personally serve Halfacre. Thibodeau stated he had a valid address for Halfacre in Orange County. Although Thibodeau believed Halfacre was inside the house, Halfacre would not come to the door and did not venture outside during the many hours Thibodeau watched the residence. Based on his observations and professional experience, Thibodeau concluded that Halfacre was evading service. As the court observed in *Olvera v. Olvera, supra,* 232 Cal.App.3d at page 42, "It is not actual ignorance that permits resort to service by publication, but the inability to accomplish personal service despite the exercise of reasonable diligence." Notwithstanding Jones's efforts to personally serve Halfacre, it was Halfacre's conduct that prevented service. (See *Miller v. Superior Court* (1961) 195 Cal.App.2d 779, 786 ["[a] person who deliberately conceals himself to evade service of process is scarcely in a position to complain overmuch of unfairness in substitutive methods of notification enacted by the Legislature to cope with such situations"].)

---

[7]     As discussed, the trial court's order for service by publication included an order directing Jones to mail Halfacre a copy of the summons and complaint if his address was ascertained before expiration of the time prescribed for publication and to file a declaration of mailing or indicating the address could not be determined. Although, as Halfacre asserts, the appellate record does not indicate Jones complied with this requirement, Halfacre provides no authority that the declaration or its absence is properly considered part of the judgment roll.

As for publication of the summons in the Los Angeles Daily Journal, Halfacre has not pointed to anything in the judgment roll to support his contention the newspaper did not circulate in Orange County.[8] Halfacre's reliance on *Olvera v. Olvera, supra,* 232 Cal.App.3d 32 in this regard is misplaced. In *Olvera* the court of appeal affirmed an order granting the defendant's motion to set aside a default judgment pursuant to section 473.5. (*Olvera*, at p. 41.) The court concluded that service by publication was invalid. (*Ibid.*) Although the plaintiffs were aware of the defendant's general whereabouts, there was "no indication [in the affidavit in support of service by publication] that they had employed any of the usual means to find her." (*Id.* at p. 42.) Further, the affidavit in support of publication affirmatively stated that "'Defendant no longer resides in Riverside, [CA],'" but the application for publication sought, and the trial court ordered, publication of the summons in the Press-Enterprise, a newspaper of general circulation published in Riverside. (*Id.* at p. 36.) Taken together, the court concluded defective service by publication rendered the judgment void. (*Id.* at p. 41.)

The circumstances rendering the judgment void in *Olvera* are not present here. As discussed, Jones demonstrated reasonable diligence in locating and attempting to personally serve Halfacre with the summons and complaint. Further, nothing in the judgment roll indicates the Los Angeles Daily

---

[8]    Earlier this year, referring to both out-of-state authority and law review discussions, we recognized, as a practical matter, service by publication "'is almost guaranteed *not* to provide a defendant with notice of the action.'" (*Searles v. Archangel* (2021) 60 Cal.App.5th 43, 47.) But that is not the issue presented by Halfacre's argument the Jones's judgment is void on its face.

Journal does not circulate within Orange County in a manner that satisfies the requirements of section 415.50, subdivision (b).

Because Halfacre failed to establish the judgment was void on its face, the trial court had "no statutory power under section 473, subdivision (d)" to set aside the default judgment. (See *Cruz v. Fagor America, Inc.*, *supra,* 146 Cal.App.4th at pp. 495-496.)

3. *The Trial Court Did Not Err in Declining To Exercise Its Equitable Powers To Grant Relief*

In addition to the court's statutory authority pursuant to section 473, subdivision (b), to set aside defaults for mistake or excusable neglect, "'courts have the inherent authority to vacate a default and default judgment on equitable grounds such as extrinsic fraud or extrinsic mistake.' [Citation.] The court's ability to grant relief under its inherent power is narrower than its ability to grant relief under section 473, subdivision (b). [Citation.] This is especially true after a default judgment has been entered. 'A party who seeks to set aside a default judgment pursuant to the court's equity power must make a substantially stronger showing of the excusable nature of his or her neglect than is necessary to obtain relief under . . . section 473.' [Citation.] As our Supreme Court has explained, '[w]hen a default *judgment* has been obtained, equitable relief may be given only in exceptional circumstances. "[W]hen relief under section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court. Beyond this period there is a strong public policy in favor of the finality of judgments and only in *exceptional circumstances* should relief be granted."'" (*Kramer v. Traditional*

*Escrow, Inc.* (2020) 56 Cal.App.5th 13, 29; see *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981.)

Halfacre did not seek to set aside the default judgment based on unfairness and extrinsic fraud pursuant to the court's equitable power until his reply brief, although he contends he argued the facts supporting a finding of extrinsic fraud in his opening brief.  The rationale for the well-recognized appellate rule that points raised for the first time in a reply brief will ordinarily not be considered because it would deprive the respondent of an opportunity to counter the argument (see, e.g., *Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296, fn. 7; *Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.* (2014) 226 Cal.App.4th 26, 63) applies equally to motions in the trial court.  (See, e.g., *St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 783; cf. *Plenger v. Alza Corp.* (1992) 11 Cal.App.4th 349, 362, fn. 8.)  The trial court's ruling that Halfacre's request was not properly before it was well within the court's discretion.[9]

Notwithstanding its forfeiture ruling, however, the trial court considered Halfacre's argument and found there was insufficient evidence of extrinsic fraud to justify setting aside the default judgment.  That ruling, too, was well within the court's discretion.  (See *Rappleyea v. Campbell*, *supra*, 8 Cal.4th at p. 981 [challenge to a trial court's order denying a motion to vacate a default on equitable grounds is reversed for an abuse of discretion]; *County of San Diego v. Gorham* (2010)

_____

[9]     When the trial court stated it would not consider "unfairness" as a basis for relief at the hearing, Halfacre's attorney did not object or argue he had raised the point in his opening brief.

186 Cal.App.4th 1215, 1230 [same]; see also *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 828 ["[o]n appeal from an order denying a motion for relief from default or a default judgment we will not disturb the trial court's factual findings where, as here, they are based on substantial evidence"].)

Extrinsic fraud or extrinsic mistake are terms "broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits." (*Rappleyea v. Campbell, supra,* 8 Cal.4th at p. 981.) To set aside a judgment based upon extrinsic fraud or mistake, a defendant must satisfy three elements: (1) the defaulted party must demonstrate that it has a meritorious case; (2) the party seeking to set aside the default must articulate a satisfactory excuse for not presenting a defense to the original action; and (3) the moving party must demonstrate diligence in seeking to set aside the default once discovered. (*Id.* at p. 982.)

Emphasizing that Kurtz knew of Halfacre's addresses in Marina del Rey and Corona del Mar, Halfacre identifies as extrinsic fraud Kurtz's statement in support of the request for an order permitting service by publication that the summons and complaint could not be served by any other method, including mail service. However, the evidence, including the declarations submitted in support of and opposition to, Halfacre's motion, offered competing versions of what happened. The trial court accepted Kurtz's statements that he had mailed copies of the summons and complaint to Halfacre's Marina del Rey and Corona del Mar addresses, and those documents were never returned to him. Those facts, together with Halfacre's concession that mail from his Marina del Rey address was forwarded to him, constitute substantial evidence supporting the court's finding

17

that "it is likely the summons and complaint was forwarded to [Halfacre's] actual address and he had notice." (See *Pinto v. Farmers Ins. Exchange* (2021) 61 Cal.App.5th 676, 689 [substantial evidence may consist of inferences that are the produce of logic and reason]; *California Assn. of Medical Products Suppliers v. Maxwell-Jolly* (2011) 199 Cal.App.4th 286, 308 ["substantial evidence" consists of "'evidence that is reasonable, credible and of solid value,'" including "inferences that are the product of logic and reason"].) That finding, which necessarily meant Halfacre was not unfairly deprived of a hearing on the merits—rather, he was aware of the lawsuit and elected to ignore it—fully justified the court's conclusion there had been no extrinsic fraud.[10] Accordingly, the court did not abuse its discretion in denying Halfacre's request for equitable relief.

## DISPOSITION

The order denying Halfacre's motion to set aside the default judgment is affirmed. Jones is to recover her costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.          FEUER, J.

---

[10] Because Halfacre did not respond to the mailed copies of the summons and complaint, it was reasonable for Kurtz to conclude service by mail pursuant to section 415.30, which requires the defendant to sign and return an acknowledgment of receipt of summons, was not practicable.