Filed 1/18/22  Stan Lee Entertainment v. Lee CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION FIVE

| | |
|---|---|
| STAN LEE ENTERTAINMENT, INC., | B309080 |
| Plaintiff, | (Los Angeles County Super. Ct. No. 19STCV37703) |
| v. | |
| JOAN CELIA LEE, as Trustee, etc., | |
| Defendant and Respondent; | |
| POW! ENTERTAINMENT, INC., | |
| Movant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Gregory Wilson Alarcon, Judge.  Reversed.

Hamrick & Evans, A. Raymond Hamrick, III, Charles C. Rainey and Jamie A. Shepard for Movant and Appellant.

Freund Legal PC, Jonathan D. Freund and Craig A. Huber for Defendant and Respondent.

—————————————————————

Appellant POW! Entertainment, Inc. (POW!) appeals the trial court's orders denying its motion for leave to intervene (Code Civ. Pro., § 387),[1] and its motion to vacate and set aside the stipulated judgment (§§ 663, 473, subd. (d)) between plaintiff Stan Lee Entertainment, Inc. (SLE) and defendant and respondent, Joan Celia Lee (Trustee), as trustee for the Lee Family Survivor's Trust "A", dated June 12, 1985 (the Trust).[2]

SLE brought suit against the Trust, seeking to compel the Trust to defend SLE's intellectual property rights, which the late renowned comic book creator, Stan Lee, assigned to SLE's predecessor in an employment agreement made in 1998 (the 1998 Agreement). SLE and the Trustee agreed to a stipulated judgment decreeing that SLE owned the intellectual property rights at issue, and that the Trust had a duty to defend SLE's intellectual property rights under the 1998 Agreement.

POW! sought to intervene and set aside the judgment, claiming that, over the last two decades, multiple federal courts have held the 1998 Agreement is no longer enforceable. POW! argued that it is the owner of the intellectual property rights at issue, which Stan Lee properly assigned to it.

We conclude that POW! is entitled to intervene as of right pursuant to section 387, subdivision (d)(1)(B), and that POW! has

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] SLE is not a party to this appeal.

2

demonstrated that the judgment should be vacated and set aside pursuant to section 473, subdivision (d). The trial court's orders are reversed. The trial court is directed to enter an order granting POW! leave to intervene and to vacate and set aside the stipulated judgment.

## FACTS AND PROCEDURAL HISTORY

### *Background*

In 1998, Stan Lee co-founded SLE and entered into the 1998 Agreement, under which he agreed to assign SLE extensive rights over existing and future intellectual property, and serve as chairman, publisher, and chief creative officer of SLE for the duration of his lifetime. In exchange, Stan Lee was to receive an annual salary of $250,000, plus bonuses and benefits.[3]

---

[3] Under the 1998 Agreement, Stan Lee agreed to "assign, convey and grant to [SLE] forever, all right, title and interest I may have or control, now or in the future, in the following: Any and all ideas, names, titles, characters, symbols, logos, designs, likenesses, visual representation, artwork, stories, plots, scripts, episodes, literary property, and the conceptual universe related thereto, including my name and likeness . . . which will or have been in whole or in part disclosed in writing to, published, merchandised, advertised, and/or licensed by [SLE], its affiliates and successors in interests and licensees (which by agreement inures to [SLE's] benefit) or any of them and any copyrights, trademarks, statutory rights, common law, goodwill, moral rights and any other rights whatsoever in the Property in any and all media and/or fields, including all rights to renewal or extensions of copyright and make applications or institute suits therefor . . . ."

Soon after SLE was formed, it became Stan Lee Media, Inc. (SLMI).  In January 2001, Stan Lee notified SLMI that he was terminating the 1998 Agreement because SLMI had breached several provisions, including, but not limited to, failing to provide him with the salary and benefits he was owed.  SLMI declared bankruptcy on February 16, 2001.

On November 8, 2001, Stan Lee partnered with others to form POW! Entertainment, LLC, the wholly owned subsidiary of POW!.  Over the next 17 years, Stan Lee assigned rights in his name and likeness to POW! on multiple occasions.  In 2006, 2007, 2008, and 2011, Stan Lee executed multiple consents of use filed with the United States Trademark and Patent Office, granting POW! the right to use his name and signature as registered trademarks.[4]  Stan Lee also assigned intellectual property rights to other companies between 2001 and his death in 2018.

### Prior Litigation

On January 26, 2009, SLMI shareholders Jose Abadin and Christopher Ballad, acting on behalf of SLMI, brought suit against Stan Lee, Marvel Entertainment, Inc. (Marvel), and others, alleging that Stan Lee violated the terms of the 1998 Agreement by selling intellectual property to Marvel.  (*Abadin v. Marvel Entertainment, Inc.* (S.D.N.Y., Mar. 31, 2010, No. 09CIV.0715(PAC) [nonpub. opn.] 2010 WL 1257519 at *1 (*Abadin*).)  The court dismissed the case on two bases: (1) Stan Lee's obligations were statutorily terminated in 2005 because

---

[4] The trial court took judicial notice of the filed trademarks and prior court decisions discussed herein.

4

California law limits personal service contracts to seven years (Cal. Labor Code, § 2855a), and (2) SLMI's claims were barred by the statutory limit of four years, laches, and estoppel, because Stan Lee wrote to SLMI terminating the 1998 Agreement for breach of contract in January 2001 and had been using his own characters since 1999; SLMI could not wait a decade to enforce its alleged rights. (*Id.* at \*6.)

Notwithstanding the *Abadin* court's statement that "[t]here can be no attempt to enforce this contract beyond the statutory term," (*Abadin*, *supra*, 2010 WL 1257519 at \*6), SLMI attempted to litigate the issue in multiple federal courts. Subsequent decisions were in agreement that *Abadin* precluded SLMI from re-litigating the same alleged intellectual property claims. (See *Lee v. Marvel Enterprises, Inc.* (S.D.N.Y. 2011) 765 F.Supp.2d 440, 456 [denying SLMI's motions to intervene, vacate dismissal order, and amend complaint]; *Stan Lee Media Inc. v. Lee* (C.D. Cal., Aug. 23, 2012, No. 2:07-CV-00225-SVW) [nonpub. opn.] 2012 WL 4048871, at \*3–\*4 [granting Stan Lee's motion to dismiss]; *Stan Lee Media, Inc. v. Walt Disney Co.* (D. Colo., Sept. 5, 2013, No. 12-CV-2663-WJM-KMT) [nonpub. opn.] 2013 WL 4776026, at \*5 [dismissing SLMI's amended complaint with prejudice]; *Disney Enterprises, Inc. v. Entertainment Theatre Group* (E.D. Pa., Oct. 30, 2014, No. CIV.A. 13-5570) [nonpub. opn.] 2014 WL 5483487, at \*1 [dismissing SLMI's intervenor complaint with prejudice].)

In September 2019, approximately four months before the parties entered into the stipulated judgment in the present case, the Trust filed suit against POW! in the U.S. District Court for the Central District of California (the Federal Action). (*Lee v. POW! Entertainment, Inc.* (C.D. Cal. 2020) 468 F.Supp.3d 1220.)

As relevant here, the Trust sought declaratory judgments stating that the Trust was the owner of the intellectual property rights under the 1998 Agreement and that POW! had no right to utilize the intellectual property. It also sought to enjoin POW! from claiming an interest in the intellectual property rights or otherwise exploiting them subject to the action. The district court dismissed the Trust's action, holding that res judicata barred its claims, and imposed sanctions on the Trust and counsel for filing a frivolous lawsuit. (*Id.* at 1227–1235.)

### *The Present Lawsuit*

On October 18, 2019, approximately one month after the Trust filed the Federal Action against POW!, SLE filed its complaint against the Trust in the present case, alleging breach of the 1998 Agreement and seeking a declaratory judgment that (1) SLE "is the owner of the intellectual property and publicity rights" of Stan Lee; and (2) the Trust has "a duty and obligation to ensure [SLE] may exercise and [*sic*] unfettered right to those assets." SLE also sought an affirmative injunction ordering the Trust to "take further action to reclaim and clear title to the intellectual property rights subject to this action [as required under the 1998 Agreement]." The complaint alleged that POW! was created for the purpose of looting SLE's intellectual property, and that the Trust had "a duty to vindicate the rights under [the 1998 Agreement] and undertake to stop others, including POW!, from falsely claiming and exploiting the same."

Prior to the initial case management conference, the Trust entered into a stipulated judgment with SLE. On January 29,

6

2020, the trial court entered the stipulated judgment, which included the following statements:

"From October 15, 1998 through the date of this order, Plaintiff [SLE] has been the uninterrupted owner of all rights assigned [by the 1998 Agreement] including all rights to Stan Lee's name and likeness as provided under California law."

"Defendants shall comply with its [*sic*] contractual obligations under the [1998 Agreement] and shall cause any third parties who Defendants have reason to know are falsely and erroneously claiming rights now owned by Plaintiff under the [1998 Agreement], to cease and desist from infringing on Plaintiff's rights."

"Defendants shall perform the duties and obligations that they have assumed under the [1998 Agreement] and use all legal means available to it [sic] to cause any and all third parties to act in a manner that is consistent with Plaintiff's quiet enjoyment of the Rights and Property as defined in the [1998 Agreement]."

"This Order shall confirm that the rights, title and interest to Stan Lee's name and likeness, as well as any other present or future Rights contained within the [1998 Agreement], are now (and have been since October 15, 1998) the exclusive property of Plaintiff."

### POW!'s Motion to Intervene

On March 25, 2020, Appellant POW! filed its motion for leave to intervene.[5] POW! sought mandatory intervention

---

[5] POW! moved to intervene and vacate the stipulated judgment in a single motion. The trial court ruled that the motion constituted two separate motions and was over the page

pursuant to section 387(d)(1)(B), and argued that it was an indispensable party to the action pursuant to section 389. Alternatively, POW! sought intervention pursuant to the trial court's discretion under section 387, subdivision (d)(2). The motion stated that Stan Lee had assigned intellectual property rights to POW! as early as 2006, and had executed multiple consents of use to be filed with the U.S. Trademark and Patent Office. The motion also set forth numerous federal court cases, in which SLMI had unsuccessfully attempted to enforce its rights under the 1998 Agreement. The motion to intervene advised that the Trust had recently filed suit against POW! in the Federal Action on the basis of the 1998 Agreement, and that the District Court had dismissed the case and imposed sanctions. POW! expressed concern that the Trust would attempt to wield the stipulated judgment against it in the Federal Action (despite the fact that it was not a judgment on the merits), as evidenced by statements in the first amended complaint in the Federal Action. POW! argued that SLE and the Trust had interests that were adverse to POW! as reflected in the stipulated judgment, such that POW! could not be adequately represented in the case. POW! asserted the motion was timely, as it first became aware of the stipulated judgment on February 14, 2020, when the Trust referenced it in its first amended complaint in the Federal Action.

On July 9, 2020, the Trust filed the declaration of Jonathan D. Freund, counsel of record for the Trust, in opposition to the motion to intervene.[6] Freund declared that the stipulated

_____

limit. The trial court declined to consider the excess pages, without prejudice to POW! bringing a separate motion to vacate the judgment.

[6] SLE did not oppose the motion to intervene.

8

judgment was only binding on SLE and the Trust. Freund posited: "To be sure, if these parties decided to stipulate as between them that the sky is green and the grass is blue and that agreed upon assertion finally satisfied their dispute, of what moment is that stipulation to anyone else unless and until these parties tried to assert that someone else claiming otherwise was wrong and cited the stipulation as proof?" Freund continued, "*POW!'s request is moot* because [the Federal Action] cited by POW! as the basis for its request to intervene has been dismissed by the Federal Court." Freund conceded a relationship between the settlement of this action and the filing of the Federal Action, stating, "[a]s part of her perceived obligations, which she assumed under the terms of the Stipulated Settlement in this case, JC filed the Federal Action against [POW!]." Freund continued, "[t]hough [the Trustee] referenced in the First Amended Complaint [of the Federal Action] that she had joined forces with [SLE] pursuant to the Stipulated Settlement Agreement, the premise in her Complaint against POW! was to assert rights . . . which [the Trustee] believed were not addressed by prior litigation."[7] Freund stated that POW!'s concerns that "it should be allowed to intervene because it has a 'direct and immediate interest in this action' in that [the Trustee] 'seeks to use the Stipulated Judgment entered in this case to prop up her claims against POW! in the [Federal Action]' that might in turn

---

[7] The stipulated agreement states: "This Order shall confirm that the rights, title and interest to Stan Lee's name and likeness, as well as any other present or future Rights contained within the [1998 Agreement], are now (and have been since October 15, 1998) the exclusive property of Plaintiff."

9

'undermine thereby POW!'s rights in its own intellectual property'" were no longer of consequence. "The case is over. No one is seeking to enforce the Stipulated Judgment and it certainly is not being wielded by [the Trust] as a 'potential weapon' in the Federal Action that has now been dismissed with prejudice."[8]

On July 10, 2020, POW! filed the declaration of counsel for POW!, Charles C. Rainey, stating that the Trust had been sanctioned in the amount of $1,000,000 in the Federal Action for arguing the same facts contained in the stipulated judgment, and that Freund and his law firm had been held jointly and severally liable for $250,000. Rainey declared that the stipulated judgment likely would be used against POW! in the Federal Action. The stipulated judgment placed a cloud over POW!'s title to the intellectual property and set forth facts that directly contradicted the judgments, orders, and opinions of multiple other courts. The parties and counsel should be sanctioned.

Following a hearing, the trial court entered an order denying the motion to intervene on September 11, 2020. The trial court found that POW!'s application to intervene was timely. With respect to mandatory intervention under section 387, subdivision (d)(2), the court found POW! had an interest in the subject matter of the litigation, as the actual owner of the intellectual property rights it received from Stan Lee. It further found that POW!'s assertions "that the 1998 Agreement is not

---

[8] After the Trust filed counsel's declaration representing that the Federal Action was "over," the Trust appealed the order dismissing the Federal Action to the Ninth Circuit Court of Appeals, on September 4, 2020.

operative is supported by an extensive history of litigation provided by POW! in a line of cases." However, the trial court found that POW! had not met the requirements for mandatory intervention, as POW! "has not provided support that disposition of this action as a practical matter would impair or impede its ability to protect its interests with respect to mandatory relief; POW! has not brought arguments that its joinder could be ordered under Code of Civil Procedure section 389."

With respect to discretionary intervention under section 387, subdivision (d)(2), the court found that POW! had followed the proper procedures and had a direct and immediate interest in the action—i.e. POW! "'will either lose or gain by the direct legal operation and effect of the judgment'"—because the Trust signaled it would appeal the Federal Action and "the cloud placed on this title would directly affect POW!'s ability to obtain remuneration from intellectual property." However, the court denied discretionary intervention, finding that POW!'s intervention would enlarge the issues in the case because it would require reopening the case for POW! to present evidence of its entitlement to the intellectual property rights, and would require consideration of different defenses, notably res judicata.

### POW!'s Motion to Vacate

Following the trial court's ruling that POW!'s initial filing improperly contained two motions (and prior to the trial court's ruling on the motion to intervene), POW! filed its separate motion to vacate and set aside the stipulated judgment pursuant to sections 663 and 473, subdivision (d), or under its inherent power "to correct [its] records so as to make them speak the truth."

11

POW! argued that SLE and the Trustee conspired to have the trial court enter a stipulated judgment that contradicted the prior rulings of multiple courts.

On October 1, 2020, the Trust filed an opposition to the motion to vacate the stipulated judgment.[9]  In the opposition, the Trust asserted that section 663 did not apply to stipulated judgments by its terms and that POW! could not demonstrate that it was an "aggrieved party" threatened by the stipulated judgment with an injury that was "immediate, pecuniary, and substantial."  The Trust argued the same reasons barred POW! from seeking to vacate the judgment under section 473, subdivision (d).  A non-party is not authorized to move to vacate a judgment under section 473, unless the non-party can show it was aggrieved by a judgment that is void on its face, which the stipulated judgment was not.  The Trust noted the judgment roll did not indicate that the judgment was void and argued the court was not compelled to look beyond it.

POW! replied on October 7, 2020.  POW! argued that SLE and the Trust had committed a fraud upon the court by entering into a stipulated judgment that they knew contained false findings of fact contradicted by multiple court rulings, and for the purpose of adversely affecting POW!'s property rights.  POW! noted that the Trust's arguments were solely procedural and that the Trust did not address the substantive allegations of fraud.  POW! argued that the Trust failed to address the court's inherent authority to correct the record, and the Trust did not claim that the statements contained in the stipulated judgment were true.

---

[9] SLE did not oppose the motion to vacate and set aside the stipulated judgment.

12

POW! argued that section 663 applied to the stipulated judgment in this case because the stipulated judgment was entered by the court on an erroneous legal basis. Moreover, POW! was an "aggrieved party" under section 663, as its interest was not nominal, remote, or speculative. The stipulated judgment cast a cloud over POW!'s intellectual property interests, which the court previously found "'would directly affect POW!'s ability to obtain remuneration from intellectual property.'" POW! asserted that section 473, subdivision (d), applied because the stipulated judgment was void on its face based on the extrinsic fraud of the settling parties. The Trust's claim that the court's consideration was limited to the judgment roll was incorrect. Under California law, collusive judgments may be set aside on the basis of extrinsic evidence. POW! was clearly an aggrieved party with a direct interest in the intellectual property at issue.

On October 21, 2020, following a hearing on the matter, the trial court denied POW!'s motion to vacate and set aside the judgment without prejudice to POW! bringing a separate equitable action on the same grounds. The trial court found that the stipulated judgment could not be vacated pursuant to section 663 because that section does not apply to stipulated judgments. The trial court also denied the motion to vacate the stipulated judgment pursuant to section 473, subdivision (d), because the court had previously denied POW!'s motion to intervene; as a non-party, POW! was not eligible to seek relief under section 473, subdivision (d). The trial court did not address whether the stipulated judgment should be vacated pursuant to its inherent authority, but noted that a proposed intervenor may bring a separate equitable action to vacate the judgment. SLE specifically identified POW! as a threat to its intellectual

13

property rights against which the Trust must defend. POW! asserts ownership of the same intellectual property rights, and, at the time the instant lawsuit was filed, it was embroiled in the Federal Action, in which the Trust sought to invalidate POW!'s claims to those rights. Section 387, subdivision (d)(1)(B), requires that the person seeking intervention be "so situated that the disposition of the action *may* impair or impede that person's ability to protect that interest." (Italics added.) The statute does not employ the words *would* or *did* impair. It is the potential for impairment or impediment that triggers entitlement to intervention as of right. Further, section 387 permits intervention even after the entry of judgment; yet nothing in the statute suggests that the timing of intervention alters the standard of potential impairment. Indeed, it would be inequitable to allow SLE and the Trust to benefit from the fact that they quickly settled their action between them, and did not seek to join POW!, when they undoubtedly knew POW! was an indispensable party.

Nor are we persuaded by the argument that the disposition agreed to by SLE and the Trust is not as detrimental to POW! as the disposition may have been if the trial court had addressed the merits. Evaluating the issue in light of the actual disposition, it is clear that POW!'s ability to protect its interests may be impaired or impeded by the stipulated judgment. Although, as the trial court recognized, the stipulated judgment should ultimately have no legal effect on POW!—a nonparty who is not in privity with either of the parties to the lawsuit—the existence of the stipulated judgment can be used to cloud POW!'s title to the intellectual property and places it in a position in which it may be forced to defend that title. (See *Ferraro v. Camarlinghi*

14

(2008) 161 Cal.App.4th 509, 541–542 [a non-party may not be bound by a stipulated judgment].) This possibility places POW! in a situation in which the disposition of the action may impair or impede its ability to defend its claimed intellectual property rights.

SLE has a long, well-documented history of attempts to secure rights under the 1998 Agreement, despite the fact that the agreement has been deemed unenforceable by multiple federal courts. It is reasonable to conclude that SLE and the Trust, with which SLE has "joined forces . . . pursuant to the [stipulated judgment]", may attempt to use the stipulated judgment against POW! in the same fashion, despite the fact that the stipulated judgment should have no preclusive effect as to POW!. Presumably, the purpose of SLE's action was to secure the Trust's duty to defend its intellectual property rights, so that it would defend SLE against challengers such as POW!. Regardless of whether the stipulated judgment would enable SLE to secure those intellectual property rights as a legal matter, POW! could be forced to defend against use of the stipulated judgment in the Federal Action. In fact, events that occurred during the instant lawsuit suggest a likelihood of future misconduct. The declaration of counsel for the Trust, filed on July 9, 2020, stated that the Federal Action had been dismissed with prejudice; it proclaimed that the Federal Action was "over" and intimated that POW! could not be threatened by it. The trial court heard argument on the motion to intervene on August 24, 2020. Two weeks later, on September 4, 2020, the Trust appealed the adverse ruling dismissing the Federal Action. The Trust did not inform the court of this fact prior to the court entering its order denying POW!'s motion for leave to intervene on September 11,

15

2020—only one week later—although this fact severely undermined one of its key representations to the trial court in opposition to POW!'s motion.

The trial court did not reach the issue of whether POW! was adequately represented by SLE or the Trust under section 387, subdivision (d)(1)(B), although POW! argued that its claims were adverse to both parties. In the complaint, SLE sought a declaratory judgment that it was the sole owner of the intellectual property at issue, and stated that the Trust had "an actual, present, adverse and antagonistic interest to the property in question." It is beyond question that both parties to the lawsuit had purported interests in the intellectual property that were adverse to POW!'s interests, and could not adequately represent POW's interests in the action.

We conclude that POW! is entitled to intervene as of right. We reverse the trial court's order denying its motion for leave to intervene and direct it to enter an order granting POW! leave to intervene.

### *The Stipulated Judgment Must Be Vacated and Set Aside (§ 473, Subd. (d))*

POW! moved to vacate and set aside the stipulated judgment under sections 663 and 473, subdivision (d), and pursuant to the court's inherent power to set aside a judgment based on extrinsic fraud or mistake. We conclude that the judgment should be vacated and set aside pursuant to section 473, subdivision (d). Having reached this conclusion, we need not address the applicability of section 663 or the trial court's failure

16

to determine whether to exercise its inherent authority to vacate and set aside the stipulated judgment.

"Section 473, subdivision (d), provides a trial court 'may, on motion of either party after notice to the other party, set aside any void judgment or order.' '[I]nclusion of the word "may" in the language of section 473, subdivision (d) makes it clear that a trial court retains discretion to grant or deny a motion to set aside a void judgment [or order].' [Citation.] However, the trial court 'has no statutory power under section 473, subdivision (d) to set aside a judgment [or order] that is not void . . . .' [Citation.] Thus, the reviewing court 'generally faces two separate determinations when considering an appeal based on section 473, subdivision (d): whether the order or judgment is void and, if so, whether the trial court properly exercised its discretion in setting it aside.' [Citation.] The trial court's determination whether an order is void is reviewed de novo; its decision whether to set aside a void order is reviewed for abuse of discretion. [Citation.]" (*Pittman v. Beck Park Apartments Ltd*. (2018) 20 Cal.App.5th 1009, 1020.)

Here, the trial court, having denied POW!'s motion for leave to intervene, found that POW! was a non-party, and for that reason could not seek to vacate and set aside the judgment under section 473, subdivision (d). In light of our determination that POW! is entitled to intervene as of right, the trial court's reliance on its status as a non-party to deny relief under this section was error.

Our independent review of the record leads us to conclude that the stipulated judgment was obtained by fraud and is void. POW! requested, and the trial court granted, judicial notice of multiple federal cases holding that the 1998 Agreement was

unenforceable and that SLE was barred from pursuing an action based upon the 1998 Agreement by the doctrine of res judicata. That both SLE and the Trust were aware of this precedent is beyond question, yet SLE sought to enforce its alleged rights under the 1998 Agreement, and the Trust stipulated to a judgment entirely in SLE's favor, on the basis of the 1998 Agreement, without so much as filing an answer.

The unavoidable inference to be drawn from these facts is that there was never a justiciable controversy between SLE and the Trust—who were purportedly at odds over the import of a contract that both knew to be legally unenforceable—and that the parties colluded for the purpose of manipulating the trial court into entering the stipulated judgment.[10] "'"To invoke the jurisdiction of a court of justice, it is primarily essential that there be involved a genuine and existing controversy, calling for present adjudication as involving present rights."' [Citation.]" (*Housing Group v. United Nat. Ins. Co.* (2001) 90 Cal.App.4th 1106, 1111.) Through their collusion, SLE and the Trust falsely led the trial court to believe that it had obtained subject matter jurisdiction over the case, but in the absence of a justiciable controversy, it had not. Its entry of the stipulated judgment was void. (See *Id.* at p. 1115 [stipulated judgment void where there is no justiciable controversy and therefore no subject matter jurisdiction].)

Having determined that POW! is entitled to intervene as of right and become a party to the action, and that the stipulated

---

[10] At oral argument, when asked whether this court should reach the motion to vacate as opposed to remanding the matter, respondent conceded this court could decide that issue based on the current record.

judgment was void (and obtained by fraud upon the court), we conclude that the trial court abused its discretion when it denied POW!'s motion to vacate and set aside the judgment.  We reverse the trial court's order and direct it to vacate and set aside the stipulated judgment.

## DISPOSITION

The trial court's orders denying POW!'s motion for leave to intervene and motion to set aside and vacate the stipulated judgment are reversed.  The trial court is directed to enter an order granting POW! leave to intervene, and to vacate and set aside the stipulated judgment.  POW! shall recover its costs on appeal.


MOOR, J.


We concur:


BAKER, Acting P.J.


KIM, J.