Filed 6/25/25  Burrow v. Nguyen CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| HUONG BURROW et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>LONG THANH NGUYEN et al.,<br><br>    Defendants and Respondents. | H051422<br>(Santa Clara County<br> Super. Ct. No. 21CV382438) |

Huong and Neil Burrow (the Burrows) obtained default judgments against Long Thanh Nguyen (Long), LTN Market Ventures LLC (LTN), Joseph Nguyen (Joseph), Jenny Nguyen (Jenny), Hai Thanh Nguyen (Hai), Long's Landscaping and Construction (Long's Landscaping), and Long's Landscape and Construction, LLC (Long's Landscape) (collectively, defendants)[1] when defendants failed to respond to the Burrows' first amended complaint.  All defendants except for LTN filed motions for new trial (Code Civ. Proc.,[2] §§ 657, 661), to vacate judgment (§ 663), to set aside a

---

[1] For clarity, we generally refer to the individual defendants by their first names.

[2] All further unspecified statutory references are to the Code of Civil Procedure.

void judgment (§ 473, subd. (d)), and to set aside default (§ 473, subd. (b)), which the trial court granted. The Burrows appeal the orders granting defendants' motions.

For the reasons stated below, we direct the trial court to modify the challenged orders to specify that the motions are granted solely as to Long, Joseph, Jenny, Hai, Long's Landscaping, and Long's Landscape, and the default judgment entered against LTN remains unchallenged and valid. We affirm the challenged orders as modified.

## I. FACTS AND PROCEDURAL BACKGROUND

On May 18, 2021, the Burrows filed a complaint against Long, LTN, and three LTN employees.[3] The proofs of service state that LTN was personally served through its authorized agent in Las Vegas (the Las Vegas address) with the summons and complaint on June 10, 2021. Long was personally served with the same documents at his address on Diller Street in Alameda (the Diller Street address) on June 18, 2021. Long and LTN do not challenge service of the original summons and complaint.

On July 22, 2021, the Burrows filed a request for entry of default, and the court entered default against LTN. On July 27, 2021, the Burrows filed a request for entry of default, and the court entered default against Long.

On August 17, 2021, the Burrows filed a first amended complaint against most of the original defendants—Long, LTN, and two LTN employees[4]—and added Joseph, Jenny, Hai, Long's Landscaping, and Long's Landscape as defendants. The Burrows requested a minimum of $510,000 in

___

[3] As the facts underlying the Burrows' complaint in the trial court are not relevant to the analysis and disposition of this appeal, we do not recount them here.

[4] The Burrows dismissed their first amended complaint against the LTN employees, and they are not parties to the appeal.

2

compensatory damages, special and incidental damages, and punitive damages, all subject to proof, among other relief. The proofs of service state that Jenny, Joseph, and Hai were all personally served with various documents, including the summons and first amended complaint, at their address on Charing Cross Road in Berkeley (the Charing Cross address) on October 12, 2021, at 7:45 p.m.; Long was personally served with the same documents at the Diller Street address on October 12, 2021, at 7:20 p.m.; Long's Landscape and Long's Landscaping were each served through their registered agent and general partner authorized to accept service (Joseph), at the Charing Cross address on October 12, 2021, at 7:45 p.m.; and LTN was served through its authorized agent at the Las Vegas address on October 13, 2021, at 12:05 p.m. (the Charing Cross address, Diller Street address, and Las Vegas address are collectively referred to hereafter as the service addresses).[5]

The Burrows had the first amended complaint, summons, and other documents translated into Vietnamese and served the translated documents on Joseph and Jenny by mail on November 2, 2021. The Burrows stated that they provided the translations to Joseph and Jenny "[t]o ensure [that they] understood the allegations against them and all material information pertaining to th[e] action." The Burrows also had Joseph and Jenny personally served with these translated documents on November 11, 2021. The proofs of service state that the documents were personally served on Joseph and Jenny at the Charing Cross address at 7:31 p.m.

---

[5] The Burrows also served on defendants by certified mail, return receipt requested, notices of lis pendens and related notices against defendants' properties.

It is undisputed that defendants did not file an answer or otherwise respond to the first amended complaint.

On November 19, 2021, the Burrows requested the entry of default against Hai, Jenny, Joseph, Long, Long's Landscape, Long's Landscaping, and LTN. The clerk entered default against defendants on November 19, 2021, November 21, 2021, and May 5, 2022.[6] The proofs of service for the requests for entry of default against Long, Joseph, Jenny, Hai, LTN, and Long's Landscaping stated that they were each served the specific request for entry of default against them by mail at the applicable service address on November 19, 2021. The proof of service for the request for entry of default against Long's Landscape states that it was served by mail on defendants at their respective service addresses on May 5, 2022.

On May 26, 2022, the Burrows filed an application for default judgment, together with supporting declarations, against defendants under section 585, subdivisions (b) and (d) for failure to respond to the first amended complaint, noting that the six-month period within which defendants could have sought relief had expired on May 19, 2022.[7] They requested in their section 425.115 statements punitive damages of $1.5 million against Long, Joseph, Jenny, and Hai individually. That same day, the court entered default, and the Burrows served by mail their application

_____

[6] The trial court did not initially enter a default against Long's Landscape because the Burrows provided the incorrect filing date for the complaint in their request. On May 5, 2022, the Burrows filed a new request for entry of default against Long's Landscape, which the court granted.

[7] The Burrows acknowledged that their request for entry of default had not yet been granted with respect to Long's Landscape at the time they filed their application for default judgment. Nevertheless, they included Long's Landscape in the application. Long's Landscape does not challenge this timing on appeal.

and supporting declarations, as well as their request for entry of default, on defendants at the service addresses.

On March 6, 2023, Judge Sunil R. Kulkarni held a "prove-up" hearing and examined the Burrows' witnesses. Defendants did not appear at the hearing. Two days later, Judge Kulkarni entered judgment in favor of the Burrows and against defendants because of defendants' failure to answer or otherwise respond to the first amended complaint within the time allowed under section 412.20. As pertinent to this appeal, among other relief granted (including $510,000 in compensatory damages), the court ordered Long to pay $2 million in punitive damages to the Burrows.

On May 1, 2023, the Burrows filed the notice of entry of judgment and served the notice by mail on defendants. The notice of entry of judgment was served on Long at the Diller Street address, and on Joseph, Jenny, Hai, LTN, Long's Landscaping, and Long's Landscape at the Charing Cross address.[8]

On May 16, 2023, defendants (including LTN) filed a notice of intention to file a motion to set aside the default judgment entered on May 1, 2023, and for new trial under sections 657 and 661. The notice cited the following grounds for new trial: irregularity in the proceedings of the court, irregularity in the proceedings of the Burrows in obtaining default judgment and/or their failure to provide sufficient notice of damages included in the judgment, irregularity in the order granting default judgment, abuse of the court's discretion in granting default judgment, accident or surprise, excessive damages, and insufficiency of evidence to justify the default judgment and/or the damages award. Defendants stated that the motion

---

[8] It is not clear from the record why the notice of entry of default judgment was served on LTN at the Charing Cross address rather than at the Las Vegas address.

5

would be based on, among other things, declarations supporting the asserted grounds.

That same day, defendants also filed a notice of intention to file motion to set aside and vacate the default judgment under sections 473 and 661. Defendants asserted that the motion would be based on an "[i]ncorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts" and declarations supporting such grounds, in accordance with sections 663 and 661.

On May 26, 2023, defendants filed motions for new trial (§§ 657, 661), to vacate judgment (§ 663), to set aside void judgment due to improper service (§ 473, subd. (d)), and to set aside default based on inadvertence, surprise, and/or excusable neglect (§ 473, subd. (b)). Defendants also moved for new trial "under the inherent equity power of the court, and related equitable principles."

Defendants argued that the trial court should grant a new trial on the basis of irregularity in the proceedings because the Burrows did not specify the amount of punitive damages requested prior to entry of default, the awarded damages were excessive, and the evidence was insufficient to support a finding of liability against defendants. They did not enumerate the grounds upon which the judgment should be vacated, citing only generally to "the reasons set forth herein" without further specification.[9]

Defendants argued that the trial court should set aside the default judgment as void under section 473, subdivision (d) because of lack of proper

---

[9] In their reply brief in the trial court, defendants asserted that the court should grant their motion to vacate because of (1) the lack of evidence to support findings of liability and damages against them, and (2) improper service of the first amended complaint and notice of punitive damages.

service of the summons on all defendants except for LTN. Defendants challenged the purported service of the first amended complaint on Hai, Jenny, and Joseph on October 12, 2021, asserting that they were not at the Charing Cross address at the time stated on the proof of service, 7:45 p.m. They argued that default judgment against Hai, Jenny, Joseph, Long's Landscaping, and Long's Landscape was void based on invalid service on Hai, Jenny, and Joseph, the latter being the registered agent and person authorized to accept service for Long's Landscape and Long's Landscaping, respectively. In addition, defendants contended that service could not have been completed on Long at the Diller Street address at the time indicated on the proof of service, 7:20 p.m., because Long was not present at that address at that time. Defendants provided "[g]eolocated photographs" they argued served as evidence of Hai, Jenny, Joseph, and Long's absence from the Charing Cross and Diller Street addresses at the time of the purported service. They argued that, in the alternative, the default judgment should be set aside under section 473, subdivision (b), but, other than discussing the law regarding that statute, did not explain why the court should set aside the judgment on that ground.

Defendants provided declarations supporting their assertion that they were not served with the first amended complaint and related papers. Hai and his wife, Cam Ho, submitted declarations asserting that Hai took a photo of the kitchen remodel he was working on at a home on Pleitner Avenue in Oakland at 7:38 p.m. on October 12, 2021, and Hai arrived at Cam's mother's house on 98th Avenue in Oakland—located approximately 15 minutes away from the Pleitner Avenue address—"just before 8[:00] p[.]m." Joseph's and Jenny's declarations, as well as a declaration by their cousin, asserted that Joseph and Jenny were in southern California the evening of October 12,

2021, and Joseph and Jenny claimed in their declarations that they had left their home that morning to drive to southern California. Joseph's and Jenny's declarations were translated from Vietnamese into English and they stated in their respective declarations that, while they were fluent in Vietnamese, they could not speak or read English. Long's wife, Tiffany Aguon, asserted in her declaration that she and Long were with their children at a shopping plaza the evening of October 12, 2021, and included photos purportedly taken at locations within the shopping plaza at 6:56 p.m. and 7:27 p.m. that evening.

In support of defendants' argument that service of the documents (including the summons and first amended complaint translated into Vietnamese) on Hai, Joseph, and Jenny on November 11, 2021, "never occurred," Hai later provided a declaration in which he asserted that he and his family had "fully moved out of" the Charing Cross address on November 9, 2021.

In their opposition to the motion for new trial, the Burrows argued that a party against whom default judgment has been entered "generally cannot move for a new trial," a bench officer other than Judge Kulkarni could not "modify the judgment based on conflicting evidence," the defaults were properly entered and notices of the claim for punitive damages were properly and timely served, there was no basis for arguing the awarded damages were excessive, and defendants' motion to vacate under section 663 improperly requested the trial court to reweigh evidence and consider new evidence.

On June 16, 2023, defendants filed an ex parte application asking the trial court to advance the hearing date and shorten the time to hear the motion for new trial and to vacate judgment in order to comply with the 75-

8

day statutory deadline to hear such motions under sections 660 and 663.[10] On June 20, 2023, the parties filed a stipulation and order agreeing to advance the hearing date. The stipulation and order acknowledged that Judge Kulkarni had conducted the prove up hearing and "motions for new trial and to vacate the trial are required to be heard before the trial judge whenever possible," but stated that the motions would be heard by another judge, "as [Judge Kulkarni] is unavailable during the relevant period."

On June 22, 2023, defendants filed a further ex parte application asking the trial court to advance the hearing date and shorten the time to hear the motion for new trial and to vacate judgment in order to comply with section 661.[11] The application stated that the parties had stipulated to have the matter heard on July 3, 2023, before another judge, acknowledging that Judge Kulkarni was "not available to hear a motion for new trial." (Underscoring & boldface omitted.) The parties concurrently filed the referenced stipulation and order. The stipulation and order acknowledged that the parties had been notified that Judge Kulkarni was not available.

---

[10] Under section 660, subdivision (c), "the power of the court to rule on a motion for a new trial shall expire 75 days after the mailing of notice of entry of judgment by the clerk of the court pursuant to [s]ection 664.5 or 75 days after service on the moving party by any party of written notice of entry of judgment, whichever is earlier, or if that notice has not been given, 75 days after the filing of the first notice of intention to move for a new trial."

[11] Section 661 states that a motion for new trial, "if heard by a judge other than the trial judge shall be argued orally or shall be submitted without oral argument, as the judge may direct, not later than ten (10) days before the expiration of the time within which the court has power to pass on the same."

9

On July 3, 2023, Judge Evette D. Pennypacker[12] heard the motion for new trial and to vacate the judgment.[13]

On July 11, 2023, the trial court filed its order granting the motion to vacate judgment and for new trial. The court found that it had the authority under section 661 to hear the motion because Judge Kulkarni was unavailable to hear the motion during the relevant period, and the parties were aware of and did not object to the fact that a bench officer other than Judge Kulkarni would be hearing the motions. In addition, the court found that the "[d]efendants" could "properly seek to vacate the judgment and move for a new trial" despite the entry of default against them, noting that a court may grant a new trial if the damages are excessive or if the court finds errors of law. The court found that the amount of punitive damages awarded against Long exceeded the amount in the notice of punitive damages. The court found that the remaining defendants were not properly served with either the first amended complaint or the notice of punitive damages. It observed that defendants submitted evidence to demonstrate that they were not present at the stated time and location on the proofs of service, and that the Burrows offered only those challenged proofs of service in response. The court concluded that the aforementioned errors rendered the default judgment void as to all defendants. The court's order did not expressly exclude the default judgment against LTN.

The following day, the Burrows filed their opposition to defendants' motion to set aside the judgment and default. They argued that the fact that

---

[12] Hereafter, references to the "trial court" or "court" are to Judge Pennypacker.

[13] The hearings on the motion for new trial and to vacate judgment and the motion to set aside the default judgment were not reported.

10

defendants did not challenge the validity of service for the other documents the Burrows served on them discredited their "claims that they had no notice of the lawsuit," and noted that Hai's wife, Cam, signed return receipts for five sets of documents sent to the Charing Cross address.[14]  In addition, the Burrows asserted that cellphone metadata is easy to manipulate and challenged the credibility of declarations submitted by defendants' family members and the proffered photographic evidence of defendants' locations at the time of service.

The Burrows submitted in support of their opposition a declaration by the process server, Christina Alexander-Barkley, who served the summons, first amended complaint, and related documents on defendants on October 12, 2021.  Alexander-Barkley maintained that Long identified himself by name to her on October 12, 2021, when she went to the Diller Street address and gave him the papers.  She asserted that Hai, Joseph, and Jenny each came to the door of the house at the Charing Cross address and confirmed their identity to her before she gave them the documents, including multiple sets for Joseph because he was served individually and "for two companies." Alexander-Barkley further asserted that, when she returned to the Charing Cross Road address on November 11, 2021, Joseph, Jenny, and Hai again came to the door and each confirmed their identity to her before she gave them the documents, including multiple sets again for Joseph.

---

[14] Among the exhibits the Burrows submitted to support their opposition to the motion to set aside the default judgment were return receipts signed by Cam for certified mail sent to Hai, Joseph, Jenny, Long's Landscape, and Long's Landscaping and received by Cam on November 13, 2021.  Former counsel for the Burrows, Jonah Toleno, attested in his declaration that the return receipts were for service of notices of lis pendens translated into Vietnamese.

11

In reply, defendants argued that mail service does not constitute service and that, regardless of whether Cam signed the return receipts, she was not a party and, therefore, her signature on the return receipts did not constitute evidence of personal service on defendants. They also attacked the credibility of Alexander-Barkley's declaration and denied the Burrows' allegations that defendants had manipulated the photographic evidence.

On July 25, 2023, the trial court heard the motion to set aside entry of default. The following day, the trial court filed its order granting the motion to set aside the default and default judgment. The court observed that Alexander-Barkley did not declare she speaks Vietnamese and some of the documents, including the declarations that were translated into Vietnamese, "ma[de it] clear that [the defendants] do not speak English."[15] The court found there was "no evidence that the individuals questioned at these service locations understood what they were being asked," making it "credible that they were not the [d]efendants." The court concluded that the evidence weighed in favor of defendants: "That documents were mailed does not relate to whether personal service was effectuated, that a non-defendant signed return receipts does not evince personal service of the complaint and summons or knowledge to be imputed to the [d]efendants, and that a very earnest English speaking process server recalls speaking to people who may or may not have been [d]efendants and may or may not have understood

_____

[15] Jenny's and Joseph's declarations asserted that they do not speak or read English. However, neither Long nor Hai made a similar contention. Although (as discussed *post* (pt. II.C.2.)) we do not disturb the trial court's finding that the defendants were not present at the purported time and location of service of the first amended complaint and summons, the record on appeal does not appear to include substantial evidence that all the individual defendants cannot read or speak English.

12

what documents they were told they were receiving does not tip the scale in [p]laintiff's direction." The court granted defendants' motion to set aside, confirmed its prior ruling granting the motion to vacate judgment, and noted that the Burrows' motion to modify judgment (filed June 14, 2023) was moot.[16]

The Burrows appeal the July 11, 2023 order granting motion to vacate the judgment and motion for new trial and the July 26, 2023 order granting motion to set aside default and default judgment.

## II. DISCUSSION

The Burrows argue that the parties' stipulation that a different bench officer could hear the motion for new trial does not overcome the requirement under section 661 that a motion for new trial be heard by the same judge who presided over the original trial. In addition, they contend that (1) the trial court exceeded its jurisdiction because " 'improper service' " is neither an enumerated basis for granting a new trial under section 657 nor stated in defendants' notice of intent to move for new trial; (2) the trial court erred by considering extrinsic evidence, namely, defendants' declarations, that were not before Judge Kulkarni at the time default judgment was entered;[17] (3) the

---

[16] In their motion to modify default judgment (motion to modify), the Burrows sought to revise the $2 million punitive damages award against Long because it exceeded the $1.5 million they had requested in their first amended complaint. Defendants filed their opposition to the motion to modify the day after the trial court granted their motion for new trial and to vacate judgment. Defendants argued that the Burrows' motion to modify was moot given the trial court's July 11, 2023 order. The Burrows ask this court to reverse the July 11, 2023 order and remand to the trial court with instructions to modify the punitive damages award against Long.

[17] In reciting the proceedings in the trial court, the Burrows suggest that Long's federal conviction for wire fraud renders not credible the claims

13

default judgments against six of the seven defendants were valid on their face because they were properly served with the first amended complaint;[18] and (4) defendants' motion to set aside the default judgment was untimely both under section 473 and because of defendants' lack of diligence in seeking relief.  The Burrows argue that, because not all defendants asserted faulty service of process, the default judgment should not have been rendered void for all seven defendants.  The Burrows also contend that the time to contest the service of process had expired.

Defendants disagree and request that this court affirm the challenged orders.

*A. Applicable Law*

"Under an interlocking set of statutes and judicial rules, a party who has not been properly served (constructively or personally) . . . has multiple

---

made in the motions and in his wife's declaration that he was not at the Diller Street address at the time of service of the first amended complaint. The Burrows request that this court take judicial notice of Long's federal indictment and the criminal minutes reflecting his guilty plea.

The Burrows acknowledge that neither document was before the trial court when it issued the challenged orders.  Because the indictment and criminal minutes were not presented to the trial court, they generally may not be considered on appeal.  (*Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1306–1307; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)  The Burrows have not presented any exceptional circumstances here that would justify deviation from that general principle.  (*Vons*, at p. 444, fn. 3.)  Moreover, "the truth of the matters alleged in the indictment is not the proper subject of judicial notice" (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1147, fn. 5), and we decide the materials are irrelevant to the issues before us.  (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2.)  We deny the request for judicial notice.

[18] The Burrows concede that the default judgment against Long is void on its face because it awarded punitive damages in excess of the amount stated in their notice of claim for punitive damages.

avenues of relief from judgment." (*California Capital Insurance Company v. Hoehn* (2024) 17 Cal.5th 207, 214–215 (*California Capital*).) These include motion to vacate judgment and grant of a new trial (*Carney v. Simmonds* (1957) 49 Cal.2d 84, 90 [concluding that a motion for new trial is proper procedure for a default judgment "whether the judgment is based on law or fact or both"]; *Don v. Cruz* (1982) 131 Cal.App.3d 695, 704) and motion to set aside the default judgment (see *Kremerman v. White* (2021) 71 Cal.App.5th 358, 369 (*Kremerman*)).

Under section 657, a court may modify or vacate a judgment "in whole or in part" and grant a new trial for any of several reasons that "materially affect[] the substantial rights" of the moving party. The court must specify the ground(s) and reason(s) for granting the new trial. (*Ibid.*) It may not grant a new trial upon the ground of excessive damages unless it is clear, based upon a review of the entire record, "including reasonable inferences therefrom," that the court should have reached a different decision. (*Ibid.*)

An appellate court must affirm a trial court order granting a new trial "if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons," except where it has been granted on the ground of excessive damages. (§ 657.) The reviewing court may only reverse an order granting a new trial "if there is no substantial basis in the record for any of" the reasons specified in the order. (*Ibid.*)

"The motion for a new trial shall be heard and determined by the judge who presided at the trial; provided, however, that in case of the inability of such judge or if at the time noticed for hearing thereon he is absent from the county where the trial was had, the same shall be heard and determined by any other judge of the same court." (§ 661.) If the motion for new trial is

heard by a judge other than the trial judge, it must be argued or submitted without oral argument no later than 10 days before the court's power to rule on the motion expires.  (*Ibid*.)

Under section 473, subdivision (d), a "court may . . . on motion of either party after notice to the other party, set aside any void judgment or order," including " 'a default judgment which is valid on its face, but void, as a matter of law, due to improper service.' "  (*Kremerman*, *supra*, 71 Cal.App.5th at p. 371; see also *California Capital*, *supra*, 17 Cal.5th at p. 215; *First American Title Ins. Co. v. Banerjee* (2022) 87 Cal.App.5th 37, 42 [" 'A default judgment is void if the trial court lacked jurisdiction over the parties.' [Citation.]  A default judgment entered against a defendant who was not served in the manner prescribed by statute is void."]; *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1228 (*Gorham*).)

"The due process clauses of the United States and California Constitutions require that a party be given reasonable notice of a judicial action or proceeding.  [Citation.]  To establish personal jurisdiction, compliance with statutory procedures for service of process is essential; if a default judgment was entered against a defendant who was not served with a summons as required by statute, the judgment is void, as the court lacked jurisdiction in a fundamental sense over the party and lacked authority to enter judgment."  (*Kremerman*, *supra*, 71 Cal.App.5th at p. 370.)  When a court lacks fundamental jurisdiction over a party, the " 'ensuing judgment is void, and "thus vulnerable to direct or collateral attack *at any time*." ' "  (*Gorham*, *supra*, 186 Cal.App.4th at p. 1225.)

"In determining whether an order is void for purposes of section 473, subdivision (d), courts distinguish between orders that are void on the face of the record and orders that appear valid on the face of the record but are

16

shown to be invalid through consideration of extrinsic evidence." (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020 (*Pittman*).) "A judgment that is void on its face may be set aside at any time." (*Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 42 (*Manson*).)

If the order can be shown to be invalid only by considering extrinsic evidence (such as through declarations and/or testimony), it is not void on its face. (*Pittman, supra,* 20 Cal.App.5th at p. 1021.) Some courts had previously held that, "[w]here a party moves under section 473, subdivision (d) to set aside 'a judgment that, though valid on its face, is void for lack of proper service,'" they must do so within two years from the date of entry of default judgment (*Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 180) or by initiating an independent equitable action. (*Pittman*, at p. 1021.) However, our Supreme Court recently held that "a section 473(d) motion to vacate a judgment that is void for lack of proper service is not subject to the judicially imposed two-year limitation."[19] (*California Capital, supra*, 17 Cal.5th at p. 225.) The Supreme Court further noted that "requiring the filing of an independent equitable action in order to vacate a default judgment for lack of proper service has the potential for adding additional costs and burdens on defendants." (*Id.* at p. 226.) The Supreme Court concluded that "[p]rocedural hurdles that are unnecessary to the fair

[19] In *California Capital*, the California Supreme Court "note[d] some courts require defendants seeking to vacate a default judgment to act with reasonable diligence after learning of that judgment" (*California Capital, supra*, 17 Cal.5th at p. 225, fn. 11), while others "have cast doubt on the imposition of such a requirement." (*Ibid.*) The Burrows did not argue in the trial court that a party seeking relief under section 473, subdivision (d) must have acted with reasonable diligence (although they did address the issue as to section 473, subdivision (b)) and therefore have forfeited on appeal any claim of error on this point as to section 473, subdivision (d).

adjudication of default judgments should not stand in the way of the vindication of a defendant's due process rights." (*Ibid.*)

If the applicable time in which to seek statutory relief under section 473 has passed, a court "has inherent power to" (*Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, 1245 (*Mechling*)) and "may set aside the default and judgment on equitable grounds." (*Manson, supra,* 176 Cal.App.4th at p. 42, citing *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981; see also *Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.* (2020) 56 Cal.App.5th 894, 910 (*Luxury Asset Lending*) [" ' "[A] trial court may . . . vacate a default on equitable grounds even if statutory relief is unavailable." ' "].)

### B. Standard of Review

"An order granting relief from a default and default judgment under the provisions of section 473 is reviewed for abuse of discretion. [Citation.] An order vacating a default on equitable grounds is also reviewed for abuse of discretion." (*Manson, supra,* 176 Cal.App.4th at p. 42; *Politsch v. Metroplaza Partners, LLC* (2025) 109 Cal.App.5th 397, 404; *Luxury Asset Lending, supra,* 56 Cal.App.5th at p. 907 ["Trial court rulings on motions for relief from default are subject to [review under] an abuse of discretion standard."]; *Pittman, supra,* 20 Cal.App.5th at p. 1020.) We review the trial court's factual findings for substantial evidence in the record and review de novo its legal conclusions. (See *Gorham, supra,* 186 Cal.App.4th at p. 1230; see also *Pittman,* at p. 1020.)

"Even so, '[w]ith respect to setting aside a default judgment, it is the policy of the law to favor, whenever possible, a hearing on the merits, and appellate courts are much more disposed to affirm an order where the result is to compel a trial on the merits than they are when the judgment by default

18

is allowed to stand and it appears that a substantial defense could be made.' " (*Luxury Asset Lending*, *supra*, 56 Cal.App.5th at pp. 907–908; *Shapiro v. Clark* (2008) 164 Cal.App.4th 1128, 1139 ["While a request for relief under section 473(b) is entrusted 'largely' to the trial court's discretion [citation], the law strongly favors an exercise of that discretion in favor of granting relief."].)

In reviewing the trial court's findings, the appellate court has " 'no power to judge [] the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom.' " (*Leff v. Gunter* (1983) 33 Cal.3d 508, 518; *In re S.C.* (2006) 138 Cal.App.4th 396, 415; *In re Marriage of Martin* (1991) 229 Cal.App.3d 1196, 1200.) " ' " '[I]t is the exclusive province of' " ' " the trial court " ' " " 'to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " ' " (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968.) " 'Our inquiry "begins and ends with the determination as to whether there is substantial evidence, contradicted or uncontradicted, which will support the finding of fact." ' " (*San Diego Unified School Dist. v. Commission on Professional Competence* (2013) 214 Cal.App.4th 1120, 1142.) "If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 874 (*Bowers*), italics omitted.)

*C. Analysis*

1. <u>Availability of Trial Judge under Section 661</u>

We address, as a threshold issue, the Burrows' contention that the trial court exceeded its jurisdiction in contravention of section 661 by hearing and

determining the motion for new trial because it was not the bench officer who presided over the prove up hearing. A party's right to have its motion for new trial "heard and determined by the judge who presided at the trial" is limited by the statute's language authorizing a different bench officer of the same court to hear and determine the motion "in case of the inability" or absence of the original bench officer "from the county where the trial was had." (§ 661.)

The parties here twice acknowledged that Judge Kulkarni would be "unavailable during the relevant period" and agreed that the motions would be heard by another judge. In addition, the trial court found in its order that Judge Kulkarni was unavailable to hear the Burrows' motion for new trial, which authorized her to hear and determine the motion in his stead. (See *Still v. Pearson* (1950) 96 Cal.App.2d 315, 317–318.) Nevertheless, on appeal, the Burrows argue that "parties cannot stipulate around [s]ection 661's mandate" that a motion for new trial must be made before the bench officer who presided over the initial trial.

In support, the Burrows rely on *Francis v. Superior Court* (1935) 3 Cal.2d 19 and *Telefilm, Inc. v. Superior Court* (1949) 33 Cal.2d 289 (*Telefilm*). We reject the Burrows' contention that these cases establish the trial court erred on these facts. *Francis* is distinguishable because the bench officer who presided over the original trial in that case was available at the time the motion was made, thus rendering the exception inapplicable. (*Francis*, at p. 27.)

The Burrows contend that, pursuant to *Telefilm*, "inability" refers narrowly only to " 'death or the happening of an equally significant event in life affecting [the judge's] continued performance of his judicial duties, such as expiration of his term of office, resignation or retirement from service, disqualification, as well as some physical or mental disorder.' " (Citing

*Telefilm*, *supra*, 33 Cal.2d at p. 292.)  We disagree with this reading of the decision.  The quoted language sets forth a nonexhaustive list of examples of inability, and the *Telefilm* court cites to a broader dictionary definition of " 'inability' ":  " 'Quality or state of being unable; lack of ability; want of sufficient power, strength, resources, or capacity.' " (*Ibid*.)  *Telefilm* observes that "the all-inclusive term 'inability' is employed to convey the statute's intent to provide a *broad* base for another judge's performance of the trial judge's duties when the latter is 'unable' under the prevailing circumstances." (*Id*. at pp. 293–294, italics added.)  It further states that section 661 "contemplates that circumstances may require some 'other judge of the same court' to perform the judicial duties of the trial judge because of the latter's 'inability' or 'absen(ce) from the county,' and it accordingly employs language suggestive of such interpretation as will *broaden, rather than narrow*, the premise for such other judge's exercise of jurisdiction so that litigants will not be precluded from availing themselves of their statutory remedy of seeking a new trial." (*Telefilm*, at p. 295, italics added.)

We decide that, given the trial court's factual finding as to Judge Kulkarni's unavailability, the trial court did not exceed its jurisdiction in hearing and determining the motion for new trial.

2. Default Judgments

We first address the default judgment against Long.  "A court generally may not grant a default judgment that exceeds the amount demanded in the complaint." (*Rodriguez v. Cho* (2015) 236 Cal.App.4th 742, 752, citing §§ 580, subd. (a), 585, subd. (b).)  " '[A] default judgment greater than the amount specifically demanded is void as beyond the court's jurisdiction.' " (*Rodriguez*, at p 752.)  It is undisputed that the default judgment against Long was void on its face because it awarded the Burrows $2 million in punitive damages

21

from Long when the Burrows requested only $1.5 million in their section 425.115 statement.  Therefore, the trial court did not abuse its discretion in granting the motions for new trial and to set aside the default judgment against Long.

We turn to the default judgments entered against Joseph, Jenny, Hai, Long's Landscape, and Long's Landscaping.  The Burrows contend that the trial court abused its discretion in granting relief because the summons and first amended complaint were properly served on these six defendants and, thus, the default judgments were valid on their face.  The Burrows further contend that, even if service was improper, the court erred in considering extrinsic evidence not presented to Judge Kulkarni during the prove up hearing, defendants did not timely request relief or demonstrate diligence in seeking it, and improper service is not a proper basis for granting a new trial.

A default judgment that is valid on its face may nonetheless be void for lack of proper service (see *California Capital*, *supra*, 17 Cal.5th at p. 215; *Kremerman*, *supra*, 71 Cal.App.5th at p. 371; *Gorham*, *supra*, 186 Cal.App.4th at p. 1227; *Gorham*, at p. 1226 [" '[A] judgment is void for lack of jurisdiction of the person where there is no proper service on . . . a party to the proceedings.' "]) and can be set aside at any time.  (*Gorham*, at p. 1225.)  The availability of this relief is based on a fundamental precept of due process.  " 'Failure to give notice violates "the most rudimentary demands of due process of law." ' [Citation.]  Accordingly, the high court has held that due process does not permit a state to require parties not properly served to show a meritorious defense in the underlying action before they can have their default judgments vacated.  [Citation.]  Likewise, California courts have held that 'compliance with the statutory procedures for service of process is essential to establish personal jurisdiction . . ..  Thus, a default judgment

22

entered against a defendant who was not served with a summons in the manner prescribed by statute is void.' " (*California Capital*, at p. 214.)

Substantial evidence in the record supports the trial court's finding that defendants were not properly served. Defendants submitted multiple declarations attesting to their absence from the Charing Cross and Diller Street addresses at the time service purportedly occurred. In finding improper service, the court impliedly credited these assertions. We may not disturb credibility findings supported by substantial evidence on appeal. (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 531–532.)

The trial court expressly found credible defendants' assertion that Jenny and Joseph do not speak English. Substantial evidence in the record supports the court's conclusion. The record contains certified translations of Joseph's and Jenny's declarations from Vietnamese into English. Both Joseph and Jenny attested to being fluent in Vietnamese and stated that they neither spoke nor read English. It is undisputed that Vietnamese is at least Joseph's and Jenny's primary language.

The trial court found that Alexander-Barkley did not state she could speak Vietnamese, and there was no evidence in the record that the individuals Alexander-Barkley spoke to at the Diller Street and Charing Cross addresses understood her questions posed in English. The court found credible defendants' assertion that the persons personally served by Alexander-Barkley with the summons and first amended complaint were not Joseph and Jenny. Given the substantial evidence in the record supporting the court's conclusion, we are "without power to substitute [our own] deductions for those of the trial court." (*Bowers*, *supra*, 150 Cal.App.3d at p. 874.)

In addition, the trial court found the Burrows' proffered evidence insufficient to overcome the evidence supporting defendants' contentions. Substantial evidence supports the court's finding. In support of their arguments regarding the validity of service of the summons and first amended complaint, the Burrows relied on the challenged proofs of service, proofs of service by mail of other documents, and the return receipts signed by Cam for the notices of lis pendens. The court observed that the proof of service by mail of other documents was irrelevant to the personal service of the summons and first amended complaint and a nonparty's signature on return receipts did not imply personal service on defendants. We agree.

We conclude the trial court did not abuse its discretion in finding that the default judgments against Joseph, Jenny, Hai, Long's Landscape, and Long's Landscaping were void for lack of personal service and in vacating them on that basis. (See *Mechling*, *supra*, 29 Cal.App.5th at p. 1249.) "That a different decision could have been reached is not sufficient because we cannot substitute our discretion for that of the trial court. The trial court's ruling must be beyond the bounds of reason for us to reverse it. [Citation.] We cannot conclude the court's order was irrational, arbitrary, or beyond the bounds of reason." (*Ibid.*)

Because LTN challenged neither the service of the first amended summons and complaint nor the default judgment entered against it, we construe the July 11, 2023, and July 26, 2023 orders as being limited to the other six defendants, Long, Joseph, Jenny, Hai, Long's Landscape, and Long's Landscaping. We direct the trial court to modify the challenged orders to specify that they pertain only to those six defendants and not to LTN.

24

### III.  DISPOSITION

The trial court is ordered to modify its July 11, 2023, and July 26, 2023 orders in this matter to specify that the motions to set aside judgment, for new trial, and to set aside default are granted only as to Long Thanh Nguyen, Joseph Nguyen, Jenny Nguyen, Hai Thanh Nguyen, Long's Landscaping and Construction, and Long's Landscape and Construction, and the default judgment entered against LTN Market Ventures LLC remains unchallenged and valid.  As modified, the July 11, 2023, and July 26, 2023 orders are affirmed.  In the interests of justice, the parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

25

_____

Danner, Acting P. J.

WE CONCUR:

_____

Lie, J.

_____

Wilson, J.

**H051422**
***Burrow et al. v. Nguyen et al.***